[Cite as *M6 Motors, Inc. v. Nissan of N. Olmsted, L.L.C.*, 2014-Ohio-2537.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100684

# M6 MOTORS, INC.

### PLAINTIFF-APPELLEE

vs.

# NISSAN OF NORTH OLMSTED, LLC

### DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-808958

**BEFORE:** McCormack, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** June 12, 2014

**ATTORNEYS FOR APPELLANT**

Robert A. Poklar
Shawn W. Maestle
Matthew C. Miller
Weston Hurd L.L.P.
The Tower at Erieview
1301 East 9th St., Suite 1900
Cleveland, OH 44114

Christopher M. Devito
Morganstern MacAdams & Devito Co.
623 West St. Clair Ave.
Cleveland, OH 44113-1204


**ATTORNEYS FOR APPELLEE**

James B. Niehaus
Gregory R. Farkas
Frantz Ward L.L.P.
2500 Key Center
127 Public Square
Cleveland, OH 44114

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Nissan of North Olmsted, LLC ("North Olmsted Nissan"), appeals the trial court's order granting declaratory judgment in favor of M6 Motors, Inc., d.b.a. Nissan of Middleburg Heights ("Middleburg Heights Nissan"). For the reasons that follow, we affirm the decision of the trial court.

**Procedural History and Substantive Facts**

{¶2} This appeal stems from a dispute between two Nissan dealerships: Middleburg Heights Nissan, which is located at 7168 Pearl Road, Middleburg Heights, Ohio, and North Olmsted Nissan, which is located at 28500 Lorain Road, North Olmsted, Ohio. Bernardo Moreno, Middleburg Heights Nissan's principal, formed Middleburg Heights Nissan for the purpose of acquiring a Nissan franchise from North Coast Nissan. North Coast Nissan was operating out of the Pearl Road location at the time Moreno signed the asset purchase agreement to acquire it. Moreno signed the purchase agreement on March 5, 2012, and Nissan of North America, the Nissan manufacturer ("Nissan Manufacturer"), approved the sale of North Coast Nissan to Middleburg Heights Nissan on April 30, 2012.

{¶3} After signing the purchase agreement with North Coast Nissan, Moreno met with Mike D'Amato, president of North Olmsted Nissan, and advised D'Amato that he intended to relocate the Middleburg Heights Nissan's dealership from its current location on Pearl Road to 13960 Brookpark Road, Cleveland, Ohio (the "protest site"), in addition

to 14080 Brookpark Road, purportedly for storage, which is located next door. Moreno had obtained a survey that measured the distances between the dealerships, measuring in a straight line from the closest point at each location, and forwarded the information to D'Amato. The survey indicated that the distance from the closest point of the property located at 28500 Lorain Road to the closest point of the property located at 7168 Pearl Road is 7.43 miles. The survey also indicated that the straight-line distance between 28500 Lorain Road and 14080 Brookpark Road is 7.44 miles. Moreno testified that the distance to the 14080 Brookpark Road property, rather than 13960 Brookpark Road, was measured because the storage facility was the closest property to North Olmsted Nissan's property.

{¶4} Middleburg Heights Nissan sought and received approval from the Nissan Manufacturer for its relocation to the protest site as well as to the proposed site located at 14080 Brookpark Road. On May 4, 2012, the Nissan Manufacturer advised North Olmsted Nissan that it approved the sale of North Coast's dealership assets to Middleburg Heights Nissan. The Nissan Manufacturer also advised North Olmsted Nissan that it approved the relocation of the dealership to the protest site and that upon relocation, Middleburg Heights Nissan would also be maintaining an offsite storage location for new vehicles at 14080 Brookpark Road.

{¶5} After learning of Middleburg Heights Nissan's intent to relocate, North Olmsted Nissan filed an administrative protest with the Ohio Motor Vehicle Dealers Board (the "Board") against the Nissan Manufacturer, protesting the relocation of

Middleburg Heights Nissan's franchise to the protest site. The protest was based on Moreno's expressed intent to relocate and the measurements indicated in Moreno's survey.

{¶6} On May 15, 2012, the Board accepted North Olmsted Nissan's protest and notified the Nissan Manufacturer of the protest. Upon receiving notification of North Olmsted Nissan's protest, the Nissan Manufacturer moved to dismiss the protest, arguing that North Olmsted Nissan failed to timely protest the relocation and that a dealer has no right of protest when a manufacturer proposes to relocate another dealer further from that dealer. Middleburg Heights Nissan, who was not a party to the protest, filed a motion to intervene in the proceedings as well as a motion to dismiss the protest. Middleburg Heights Nissan argued that it has a right to intervene in the proceedings and that the protest should be dismissed for lack of jurisdiction. On March 27, 2013, the hearing examiner granted Middleburg Heights Nissan's motion to intervene for the limited purposes of attending the hearing and presenting evidence to be considered by the examiner and the Board. The hearing examiner determined, however, that even though Middleburg Heights Nissan was an "other interested individual," it did not have the right to engage in discovery or conduct cross-examination of the witnesses at the hearing. The hearing examiner also denied Middleburg Heights Nissan's motion to dismiss as "moot and a legal nullity."

{¶7} Finally, the hearing examiner denied the Nissan Manufacturer's motion to dismiss the protest, finding that North Olmsted Nissan has standing to protest the

relocation. It also determined that the issue of the distance between the dealership and the protest site, whether it is 13960 Brookpark Road or 14080 Brookpark Road, is an issue of fact and was, therefore, not ripe for review under a motion to dismiss. It then ordered the matter to proceed to a hearing in order to determine whether the Nissan Manufacturer has good cause to relocate Middleburg Heights Nissan's dealership within North Olmsted Nissan's relevant market area.

{¶8} Middleburg Heights Nissan states that due to the delay of approximately one year from the date of the protest to the hearing examiner's order denying the Nissan Manufacturer's motion to dismiss, Middleburg Heights Nissan lost the ability to acquire the protest site. It therefore withdrew its request to the Nissan Manufacturer to relocate its dealership to that location on May 31, 2013.[1]

{¶9} At the same time, Middleburg Heights Nissan sought approval from the Nissan Manufacturer for relocation to 13930 Brookpark Road, Cleveland, Ohio (the "proposed site"). Middleburg Heights Nissan obtained a survey that showed the distance from the closest point of the property located at 28500 Lorain Road to the closest point of

---

[1] Following Middleburg Heights Nissan's withdrawal of its request to relocate its dealership to 13960 Brookpark Road, the Nissan Manufacturer filed with the Board a motion to dismiss as moot North Olmsted Nissan's protest of the relocation to this property. North Olmsted Nissan opposed Middleburg Heights Nissan's motion and filed its own cross-motion to dismiss and motion for summary judgment for failure to prosecute. On February 13, 2014, the hearing examiner determined in its report and recommendation that North Olmsted Nissan may not maintain a protest concerning the property located at 13960 Brookpark Road since that relocation by Middleburg Heights Nissan has been abandoned, and it recommended North Olmsted Nissan's protest be dismissed as moot. On March 20, 2014, the Board approved the report and recommendation of the hearing examiner and dismissed the protest. North Olmsted Nissan subsequently appealed the Board's dismissal to the trial court.

the property located at 13930 Brookpark Road is 7.61 miles. In his request on behalf of Middleburg Heights Nissan, Moreno provided that while the proposed site is currently occupied as an Acura dealership, he has control of the property and the facility and he has plans to sell the Acura dealership. The Nissan Manufacturer declined to approve the proposed relocation on June 12, 2013, stating as follows:

> [Middleburg Heights Nissan's] proposal to relocate to 13930 Brookpark Road presents [the Nissan Manufacturer] with the prospect of more of the same delays and failure by the Board to determine its own jurisdiction. [North Olmsted Nissan] has already threatened to protest any proposed relocation by [Middleburg Heights Nissan], presumably because it believes it can materially delay any approved relocation proposal by simply initiating a protest proceeding, regardless of whether it has any legal right to protest the relocation. The hearing examiner is apparently unwilling to address this standing question. Accordingly, because the Board failed to address the standing and jurisdiction issues in a timely way, [the Nissan Manufacturer] cannot and does not approve your request to relocate to 13930 Brookpark Road.

{¶10} On June 13, 2013, Middleburg Heights Nissan, filed a declaratory judgment action asking the trial court to declare that (1) the proper statutory interpretation of "further" as used in R.C. 4517.50(C)(3) requires the use of the straight line, or "as the crow flies," method of measuring distance, from closest point to closest point; and (2)

13930 Brookpark Road, the proposed site, is further from North Olmsted Nissan's dealership than the current dealership location at 7168 Pearl Road.

{¶11} North Olmsted Nissan moved to dismiss Middleburg Heights Nissan's complaint, stating that the trial court lacked jurisdiction to entertain the complaint because there was no controversy between the parties, Middleburg Heights Nissan had failed to exhaust its administrative remedies, and the Nissan Manufacturer was a necessary party to the dispute. Thereafter, Middleburg Heights Nissan filed a motion for summary judgment on Count 1 of the complaint, to which North Olmsted Nissan responded with a cross-motion for summary judgment.

{¶12} On August 7, 2013, the trial court issued an order denying North Olmsted Nissan's motion to dismiss. The trial court found that there is a justiciable controversy between two parties that the legislative scheme did not contemplate the Board having jurisdiction to review. The trial court further held that the Nissan Manufacturer was not a necessary party to the action because North Olmsted Nissan does not seek any relief from the Nissan Manufacturer and the Nissan Manufacturer has no "legally protectable rights" relating to either count of Middleburg Heights Nissan's complaint. On August 15, 2013, North Olmsted Nissan filed a motion for reconsideration, or alternatively, motion to stay, which was denied.[2]

---

[2] On August 26, 2013, North Olmsted Nissan filed a complaint for writ of mandamus and prohibition with the Ohio Supreme Court concerning the trial court's jurisdiction over Middleburg Heights Nissan's complaint, which the supreme court dismissed.

**{¶13}** On October 10, 2013, the court held a hearing on Counts 1 and 2 of the complaint, during which time it heard arguments on summary judgment. On November 25, 2013, the court entered judgment in favor of Middleburg Heights Nissan and against North Olmsted Nissan on all counts of the complaint. It declared that the straight line method of measurement is the appropriate method of measuring the distance between the properties for purposes of enforcing R.C. 4517.50(C)(3). The court further declared that the property located at 13930 Brookpark Road, Cleveland, Ohio, is "further" as that term is used in R.C. 4517.50(C)(3) from North Olmsted Nissan's dealership at 28500 Lorain Road, North Olmsted, Ohio, than Middleburg Heights Nissan's current dealership at 7168 Pearl Road, Middleburg Heights, Ohio.

### Assignments of Error

I. Because Middleburg Heights Nissan lacks standing, the trial court did not have jurisdiction to issue its November 25, 2013 declaratory judgment and the order is void ab initio as a matter of law and the trial court erred in not declaring same.

II. Assuming arguendo that this court determines that Middleburg Heights Nissan had the requisite standing, the trial court erred by declaring the word "further" as used in R.C. 4517.50(C)(3) is defined as measured by a straight line from the closest point of an existing line-make new motor vehicle dealer to the closest point of a relocating line-make new motor vehicle dealer.

III. Because Middleburg Heights Nissan failed to exhaust its administrative remedies, the trial court erred in not dismissing the action.

IV. Because the board has exclusive jurisdiction, the trial court erred in not dismissing the action.

## Standing

{¶14} For ease of discussion, we will address North Olmsted Nissan's assignments of error out of order.

{¶15} In North Olmsted Nissan's first assignment of error, it claims that the trial court did not have jurisdiction to review the complaint for declaratory judgment because Middleburg Heights Nissan did not have standing. As a result, North Olmsted Nissan argues that the court's order of November 25, 2013, granting declaratory judgment in favor of Middleburg Heights Nissan is void.

{¶16} Standing is a jurisdictional prerequisite that must be resolved in order for a trial court to adjudicate an action. *Belvino L.L.C. v. Empson United States*, 8th Dist. Cuyahoga No. 97305, 2012-Ohio-3074, ¶ 16, citing *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998). It is "'part of the common understanding of what it takes to make a justiciable case.'" *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 21, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "[S]tanding is not a technical rule intended to keep aggrieved parties out of court." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 47. Rather, it is a "practical concept" that is utilized to prevent the litigation of nonjusticiable interests and to ensure that a real controversy is adjudicated. *Id.*, citing *Fort Trumbull Conservancy, L.L.C. v. Alves*, 262 Conn. 480, 486, 815 A.2d 1188 (2003), quoting

*Maloney v. Pac*, 183 Conn. 313, 320, 439 A.2d 349 (1981). Courts are typically "generous" in determining whether a party has standing. *Id.*

**{¶17}** A justiciable matter is an actual controversy between parties. *Pointe at Gateway Condo. Owner's Assn. v. Schmelzer*, 8th Dist. Cuyahoga Nos. 98761 and 99130, 2013-Ohio-3615, ¶ 25, citing *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 536, 542, 660 N.E.2d 458 (1996). Declaratory judgment actions may be filed for the purposes of deciding an actual controversy. *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9. In order for a justiciable question to exist, the "threat" to a party's position "'must be actual and genuine and not merely possible or remote.'" *Id.*, citing *League for Preservation of Civil Rights v. Cincinnati*, 64 Ohio App. 195, 197, 28 N.E.2d 660 (1st Dist.1940), quoting Borchard, Declaratory Judgments (1934) 40.

**{¶18}** The purpose of a declaratory judgment action is "to serve the useful end of disposing of uncertain or disputed obligations quickly and conclusively." *Moore* at ¶ 46, quoting *Ohio Farmers Indemn. Co. v. Chames*, 170 Ohio St. 209, 213, 163 N.E.2d 367 (1959). To that end, courts construe the declaratory judgment statute liberally. *Id.* Issues of statutory interpretation can be properly presented in a complaint for declaratory judgment. *See* R.C. 2721.03.

**{¶19}** In order to obtain relief under the Declaratory Judgment Act, R.C. 2721.01, et seq., a party must establish: (1) a real controversy exists between the parties; (2) the controversy is justiciable; and (3) speedy relief is necessary to preserve the rights of the

parties. *Burger Brewing Co. v. Ohio Liquor Control Comm.*, 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973). A trial court may dismiss a complaint for declaratory judgment without addressing the merits of the case if there is (1) neither a justiciable issue nor an actual controversy between the parties requiring speedy relief, or (2) the declaratory judgment will not terminate the uncertainty or controversy. *Haley v. Bank of Am.,* 8th Dist. Cuyahoga No. 98207, 2012-Ohio-4824, ¶ 11. For purposes of a declaratory judgment action, a controversy exists "when there is a genuine dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13, 574 N.E.2d 533 (8th Dist.1988), citing *Burger Brewing Co.*

**{¶20}** A trial court's determination regarding the justiciability of a declaratory judgment action is reviewed for an abuse of discretion. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13. An abuse of discretion suggests that a trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Once a trial court determines that a matter is appropriate for declaratory judgment, its decision regarding the questions of law are reviewed de novo. *Arnott*.

**{¶21}** North Olmsted Nissan contends that Middleburg Heights Nissan does not have a justiciable controversy with North Olmsted Nissan because Middleburg Heights Nissan has admitted that the Nissan Manufacturer denied its request to relocate to 13930 Brookpark Road. North Olmsted Nissan argues that because there has already been a

denial by the manufacturer, any threat by North Olmsted Nissan to protest relocation is not a present dispute, rather the dispute is a possible controversy in the future, which is contingent upon events that have not occurred and may not occur.

{¶22} Middleburg Heights Nissan alleges, on the other hand, that (1) the Nissan Manufacturer's denial of its request to relocate to the proposed site was based upon North Olmsted Nissan's threat to protest, (2) North Olmsted Nissan's threat to continue to protest any relocation attempts made by Middleburg Heights Nissan creates a present and on-going dispute and is therefore an actual controversy, and (3) the matter can be resolved by the court's interpretation of "further" as defined in R.C. 4517.50(C)(3) and its application of that definition to the proposed site.

{¶23} On August 7, 2013, the trial court denied North Olmsted Nissan's motion to dismiss Middleburg Heights Nissan's complaint for declaratory judgment, finding a substantive and justiciable controversy between the parties. The court determined that North Olmsted Nissan's "threatened protest can be resolved by [the] court defining [the] statutory meaning of 'further' and applying that definition to [Middleburg Heights Nissan's] new property in comparison to [North Olmsted Nissan's] property." The court also found that the "real and substantial controversy [ ] will admit a decree conclusive in character."

{¶24} R.C. 4517.50(A) requires a franchisor who intends to relocate a dealership to disclose its relocation plans to any dealers of the same line-make of vehicle under certain circumstances. Specifically, R.C. 4517.50(A) provides that:

Except as provided in division (C) of this section, when a franchisor seeks to * * * relocate an existing new motor vehicle dealer at a location in a relevant market area where the same line-make of motor vehicle is then represented, the franchisor shall first give notice in writing, by certified mail, to the motor vehicle dealers board and to each franchisee of such line-make in the relevant market area of the franchisor's intention to * * * relocate an existing new motor vehicle dealer at a location in that relevant market area. * * * Within fifteen days after receiving the notice, or within fifteen days after the conclusion of any appeal procedure provided by the franchisor, whichever is later, the franchisee of the same line-make may file with the board a protest against the * * * relocation of the proposed new motor vehicle dealer. When such a protest has been filed, the board shall inform the franchisor that a timely protest has been filed and that a hearing is required pursuant to section 4517.57 of the Revised Code. * * *

{¶25} The notification requirement outlined above does not apply, however, when "[t]he relocation of an existing new motor vehicle dealer * * * relocates *further* from an existing line-make new motor vehicle dealer although the relocation is within the same line-make new motor vehicle dealer's relevant market area." (Emphasis added.) R.C. 4517(C)(3). Therefore, if the proposed relocation site is "further" from the existing dealership, notification is not required, and as a result, there is no protest.

{¶26} Here, Middleburg Heights Nissan notified the Nissan Manufacturer that it wished to relocate its Nissan dealership to 13930 Brookpark Road, after Middleburg Heights Nissan had lost its ability to relocate to the original protest site of 13960 Brookpark Road. Middleburg Heights Nissan maintains that the proposed site is "further" from North Olmsted Nissan than its existing dealership. According to the statute, if the proposed site is "further" than the existing location, then North Olmsted Nissan could not protest the relocation. Previously, the Board determined at the hearing on the original protest (to relocation to 13960 Brookpark Road) that North Olmsted Nissan did, in fact, have standing to bring the protest. It failed, however, to make a determination of the meaning of "further" as used in R.C. 4517.50(C)(3).

{¶27} The Nissan Manufacturer denied Middleburg Heights Nissan's request to relocate to 13930 Brookpark Road, based upon North Olmsted Nissan's threatened protest, stating that North Olmsted Nissan has already threatened to protest any proposed relocation by Middleburg Heights Nissan, "regardless of whether it has any legal right to protest the relocation." The Nissan Manufacturer further stated that because the Board is unwilling to address the issue of whether North Olmsted Nissan has standing to protest Middleburg Heights Nissan's relocation request, "[The Nissan Manufacturer] cannot and does not approve [Middleburg Heights Nissan's] request to relocate to 13930 Brookpark Road."

{¶28} Through this denial, the Nissan Manufacturer has made it clear that it will not approve any relocation requests made by Middleburg Heights Nissan because of

North Olmsted Nissan's threatened protest and the unsettled matter of whether the proposed relocation site is "further" from North Olmsted Nissan than Middleburg Heights Nissan's existing dealership. As such, as Moreno testified, Middleburg Heights Nissan is effectively prevented from relocating. The threat to Middleburg Heights Nissan is therefore an actual controversy that is presently occurring. Moreover, without a determination of the statutory meaning of "further," the Nissan Manufacturer will not approve any requests for relocation made by Middleburg Heights Nissan for fear of another protest by North Olmsted Nissan.

{¶29} North Olmsted Nissan provides that Middleburg Heights Nissan's claims of North Olmsted Nissan's "threatened protest" are merely hypothetical or speculative and are based on contingent events that have not occurred. As an example, it states that the proposed relocation site is currently occupied by another dealership, and therefore, 13930 Brookpark Road is not available to Middleburg Heights Nissan. North Olmsted Nissan further states that even if the site becomes available, Middleburg Heights Nissan must still seek and obtain approval from the Nissan Manufacturer for its relocation to that site once it becomes available, and there is no evidence that the Nissan Manufacturer would approve the relocation.

{¶30} As Middleburg Heights Nissan correctly notes, however, the controversy at issue in this matter is not whether Middleburg Heights Nissan may move to the proposed relocation site, as Middleburg Heights Nissan did not ask the trial court to approve its relocation. Rather, the controversy involves the interpretation and application of R.C.

4517.50(C)(3), which is a proper basis for a declaratory judgment action. Without the timely resolution of the statutory meaning of "further," Middleburg Heights Nissan cannot take the very first step in relocating, which is seeking approval from the Nissan Manufacturer. Middleburg Heights Nissan is therefore effectively prevented from relocating its dealership. As such, absent a declaratory judgment on this issue, Middleburg Heights Nissan will have no available remedy.

{¶31} North Olmsted Nissan also argues that a declaratory judgment will not terminate the uncertainty or any controversy because the Nissan Manufacturer is not a party to the action. In its order denying North Olmsted Nissan's motion to dismiss, the trial court held that the Nissan Manufacturer was not a necessary party because Middleburg Heights Nissan is not seeking relief from the Nissan Manufacturer and this action would not bind the Nissan Manufacturer in any way, stating that "[the Nissan Manufacturer] has no legally protectable rights relating to either count [for] which [Middleburg Heights Nissan] has sought relief."

{¶32} Under R.C. 2721.12(A), when declaratory relief is sought, "all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding." The failure to join a necessary party "is a jurisdictional defect" and declaratory judgment is therefore precluded. *Bretton Ridge Homeowners Club v. DeAngelis*, 51 Ohio App.3d 183, 185, 555 N.E.2d 663 (8th Dist.1988), citing *Cincinnati v. Whitman*, 44 Ohio St.2d 58, 337 N.E.2d 773 (1975).

{¶33} In the context of a declaratory judgment action, "only those persons who are legally affected are proper parties to a lawsuit." *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, 273, 328 N.E.2d 395 (1975), quoting *Schriber Sheet Metal & Roofers v. Shook*, 64 Ohio App. 276, 285, 28 N.E.2d 699 (2d Dist.1940). A party is "legally affected" if the party has a legal interest in rights that are the subject matter of the cause of action. *Rumpke Sanitary Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, ¶ 14. A "legal interest" is an interest that is "legally protectable." *Id.*

{¶34} Here, Middleburg Heights Nissan's complaint for declaratory judgment does not seek any relief from the Nissan Manufacturer. Middleburg Heights Nissan is not asking the trial court to approve its relocation or to direct the Nissan Manufacturer to perform in any manner. Rather, Middleburg Heights Nissan is asking the trial court to interpret R.C. 4517.50(C)(3) and to apply that interpretation to its proposed relocation site. Although the Nissan Manufacturer likely has a practical interest in the outcome of the action — the court's interpretation will ultimately determine whether North Olmsted Nissan has standing to protest, thus establishing whether the Nissan Manufacturer becomes involved in the proposed relocation — it has no legally protectable interest in the court's interpretation and application of the statute. In other words, the trial court's judgment would not legally bind the Nissan Manufacturer. The Nissan Manufacturer is therefore not a necessary party to Middleburg Heights Nissan's complaint for declaratory judgment.

{¶35} In light of the foregoing, we do not find that the trial court abused its discretion in finding a real and justiciable controversy that will be effectively resolved by the quick and conclusive relief obtained through a declaratory judgment.

{¶36} North Olmsted Nissan's first assignment of error is overruled.

### Administrative Remedies and Board's Exclusive Jurisdiction

{¶37} In its third and fourth assignments of error, North Olmsted Nissan claims that the trial court erred in not dismissing Middleburg Heights Nissan's complaint because the Board has exclusive authority to determine relocation protests and Middleburg Heights Nissan failed to exhaust its administrative remedies. Because North Olmsted Nissan's third and fourth assignments of error address the trial court's alleged error in not dismissing Middleburg Heights Nissan's complaint and the claims are related, we will address them together.

{¶38} In its order denying North Olmsted Nissan's motion to dismiss Middleburg Heights Nissan's complaint, the trial court determined that Middleburg Heights Nissan's declaratory judgment action did not circumvent the administrative proceedings. The court found that the current action "relates to a different property[] and involves a controversy between two parties which the legislative scheme did not contemplate the [Motor Vehicle Dealers Board] having jurisdiction to hear."

{¶39} A party filing a complaint for declaratory judgment must first exhaust any administrative remedies before invoking the jurisdiction of the common pleas court. *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 462, 674 N.E.2d 1388 (1997). The failure to

exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; rather, it is an affirmative defense. *Id.* Where a party fails to exhaust available administrative remedies, allowing declaratory relief would serve "only to circumvent an adverse decision of an administrative agency and to bypass the legislative scheme." *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 152, 586 N.E.2d 80 (1992).

{¶40} A party is not required to exhaust administrative remedies, however, where there is no administrative remedy available. *Kaufman v. Newburgh Hts.,* 26 Ohio St.2d 217, 271 N.E.2d 280 (1971). An administrative remedy would not be available, for instance, where an administrative body "lacks the authority to grant the relief sought." *State ex rel. Teamsters Local Union No. 436 v. Bd. of County Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, ¶ 24, quoting *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 115, 564 N.E.2d 477 (1990).

{¶41} An administrative agency can exercise only the jurisdiction conferred upon it by statute. *Time Warner AxS v. Pub. Util. Comm.*, 75 Ohio St.3d 229, 234, 661 N.E.2d 1097 (1996). In other words, an administrative agency has no authority beyond its statutorily delegated powers and may only exercise those powers the General Assembly expressly granted to it. *Shell v. Ohio Veterinary Med. Licensing Bd.*, 105 Ohio St.3d 420, 2005-Ohio-2423, 827 N.E.2d 766, ¶ 32.

{¶42} The statute at issue in this case is R.C. 4517.50, of the Ohio Motor Vehicle Dealers Act. This statute governs the jurisdiction of the Ohio Motor Vehicle Dealers Board over relocation disputes. It provides that a dealer may protest a relocation

approved by a manufacturer under certain circumstances. *See* R.C. 4517.50(A). The Board's jurisdiction over such relocation disputes is limited to that statute. *See Jack Matia Chevrolet, Inc. v. GMC*, 10th Dist. Franklin No. 06AP-360, 2007-Ohio-420, ¶ 14.

**{¶43}** North Olmsted Nissan's argument fails for several reasons. First, Middleburg Heights Nissan's complaint for declaratory judgment does not concern an ongoing relocation dispute. Rather, it seeks the trial court's interpretation of the meaning of "further" as stated in R.C. 4517.50(C)(3) and its application to a proposed site of relocation in order that Middleburg Heights Nissan may relocate its dealership. Second, R.C. 4517.50 governs when there is a dispute between a manufacturer and a dealer. It does not govern disputes between two dealers, such as North Olmsted Nissan and Middleburg Heights Nissan. Moreover, the record shows that Middleburg Heights Nissan was not a party to the original relocation dispute. Middleburg Heights Nissan's motion to intervene in the dispute was essentially denied by the hearing examiner, allowing only Middleburg Heights Nissan's presence and strictly limiting involvement at the hearing.

**{¶44}** Finally, as the trial court states in its order denying North Olmsted Nissan's motion to dismiss, the original relocation protest concerned the property located at 13960 Brookpark Road. The protest concerning that property has been dismissed for mootness because the site is no longer available for a Nissan franchise. The current proposed site, however, which is the property at issue in Middleburg Heights Nissan's complaint, is 13930 Brookpark Road. The Nissan Manufacturer has stated that it will not approve this

site unless and until the proper meaning of "further" is addressed by the court. The proposed site is therefore not the subject of a protest and is likewise not the subject of an administrative proceeding.

{¶45} In light of the foregoing, we find that the trial court did not abuse its discretion in finding that Middleburg Heights Nissan did not fail to exhaust its administrative remedies because Middleburg Heights Nissan had no administrative remedy available to it. The Board therefore had no statutorily provided jurisdiction over Middleburg Heights Nissan's complaint for declaratory judgment.

{¶46} North Olmsted Nissan's third and fourth assignments of error are overruled.

### Statutory Interpretation of R.C. 4517.50(C)(3)

{¶47} In its second assignment of error, North Olmsted Nissan claims that the trial court erred in declaring the word "further" as used in R.C. 4517.50(C)(3) is defined as measured by a straight line from the closest point of an existing line-make new motor vehicle dealer to the closest point of a relocating line-make new motor vehicle dealer. North Olmsted Nissan contends that the appropriate method of measurement is distance traveled.

{¶48} Statutory interpretation is a question of law that we review de novo. *State v. Lindstrom*, 8th Dist. Cuyahoga No. 96653, 2011-Ohio-6755, ¶ 8, citing *State v. Sufronko*, 105 Ohio App.3d 504, 506, 664 N.E.2d 596 (1995).

{¶49} The principal consideration with respect to the interpretation of a statute is the legislative intent. *State v. Garner*, 8th Dist. Cuyahoga Nos. 97948 and 97949,

2012-Ohio-3262, ¶ 10, citing *State v. Jordan*, 89 Ohio St.3d 488, 491, 733 N.E.2d 601 (2000). Courts must first look to the language of the statute itself in order to determine the legislative intent. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 298, 304 N.E.2d 378 (1973). When examining the actual language of a statute, words should be given their common and ordinary meaning unless the legislature has clearly expressed a contrary intention. *Youngstown Club v. Porterfield*, 21 Ohio St.2d 83, 86, 255 N.E.2d 262 (1970); R.C. 1.42.

{¶50} If a statute is clear and unambiguous, the statute must be applied as written and no further interpretation is necessary. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465 (1996). The court must give effect to the words used in a statute, while avoiding "'delet[ing] words used or insert[ing] words not used.'" *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.*, 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979), quoting *Columbus-Suburban Coach Lines v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969). A court may therefore interpret a statute only where the words of the statute are ambiguous. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.*, 32 Ohio St.3d 24, 27, 512 N.E.2d 332 (1987).

{¶51} A statute is ambiguous if the language is susceptible to more than one reasonable interpretation. *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 98115, 2012-Ohio-6008, ¶ 21; *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996). If a statute is ambiguous, the court may consider several factors, including the object sought to be obtained, the legislative history,

other laws upon the same or similar subjects, and the consequence of a particular construction.  R.C. 1.49;  *Jordan* at 492.

**{¶52}** In order to clarify an ambiguity, statutory provisions must be read together in order to "'provide[] the proper effect to each statute.'"  *Blair v. Bd. of Trustees of Sugarcreek Twp.*, 132 Ohio St.3d 151, 2012-Ohio-2165, 970 N.E.2d 884, ¶ 18, quoting *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 25.  In that regard, "[a]ll provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously unless they are irreconcilable." *Id.*

**{¶53}** R.C. 4517.50(A) provides that a dealer may protest a manufacturer's approval of the relocation of another dealership "[w]ithin fifteen days after receiving the notice [of the relocation], or within fifteen days after the conclusion of any appeal procedure provided by the franchisor, whichever is later * * *."  This section does not apply to "[t]he relocation of an existing new motor vehicle dealer that relocates *further* from an existing line-make new motor vehicle dealer although the relocation is within the same line-make new motor vehicle dealer's relevant market area."  (Emphasis added.) R.C. 4517.50(C)(3).  "Relevant market area" is defined as "any area within a radius of ten miles from the site of a potential new dealership."  R.C. 4517.01(DD).

**{¶54}** The statute does not define the word "further."  The ordinary meaning of "further" has been defined in terms of distance.  *Webster's Unabridged Dictionary* (2d Ed.1998) (defining "further" as "at or to a greater distance").  We must therefore

determine the proper measurement of the distance between the locations identified in R.C. 4517.50(C)(3). According to North Olmsted Nissan, "further" should be defined as measured by the distance traveled. Middleburg Heights Nissan, on the other hand, states that "further" is properly defined as measured using a straight-line method, or "as the crow flies."

{¶55} Courts have generally favored the straight-line method of measurement in statutes that require distance to be measured but do not specify the method of measurement. In a case involving the interpretation of the proper measure of distance in a statute governing the weighing of motor vehicles, the Ohio Supreme Court reversed the court of appeals' ruling that the phrase "within three miles" meant "road miles," or drive distance. *State v. Shepherd*, 61 Ohio St.2d 328, 401 N.E.2d 934 (1980). In that case, R.C. 4513.33 permitted a police officer to require motor vehicles to proceed to the nearest available scales to be weighed, "provided such scales are within three miles of the point where such vehicle is stopped." The defendant had been stopped and ordered to have his truck weighed. The scales, when measured by a straight line, were less than one mile from the point at which the defendant had been stopped. When measured in "road miles," they were approximately seven miles from the stopping point.

{¶56} Looking at the statute, the supreme court found the General Assembly's intent to be controlling, finding that the legislature deliberately chose the language "within three miles," rather than the "use of an inflexible road mileage limitation" to

allow the police to effectively enforce load limitations. *Shepherd* at 330. In reversing the court of appeals, the court stated:

> If the General Assembly had intended to require the use of road miles, it would have surely used a phrase more explicitly indicating that intent. The common understanding of the phrase "within three miles" is that it refers to straight-line distance.

*Id.* at 331.

{¶57} More recently, lower courts have adopted the straight-line method of measurement. In a case involving the interpretation of the phrase "within one thousand feet" contained within the residency restriction in R.C. 2950.034, the Tenth District Court of Appeals applied the ordinary meaning of the term "within" and determined that the straight-line approach is the proper method of measurement. *State ex rel. O'Brien v. Messina*, 10th Dist. Franklin No. 10AP-37, 2010-Ohio-4741, ¶ 16. The court reasoned that the straight line approach "provides more predictability and more uniform application than does the navigable distance approach, which would put the distance between the two locations in flux depending on the construction or destruction of infrastructure." *Id.* The court further found that the straight line should be measured "from property line to property line." *Id.* at ¶ 18; *see also State ex rel. O'Brien v. Heimlich*, 10th Dist. Franklin No. 08AP-521, 2009-Ohio-1550 (the court approving the straight-line measurement through global imaging software to calculate the distance between an offender's residence and a school premises for the purposes of interpretation of R.C. 2950.034(A)); *State v.*

*Franklin*, 164 Ohio App.3d 758, 2005-Ohio-6854, 843 N.E.2d 1267 (holding the court could rely on global imaging software to compute the distance between two locations using a straight line approach for drug trafficking charges enhanced for occurring within 1,000 feet of a school premises); *Drs. Guren, Jaffe & Assoc, Inc. dba Am. Dental Ctrs. v. Phillip*, 11th Dist. Lake No. 10-112, 1984 Ohio App. LEXIS 10938 (Oct. 5, 1984) (finding the plain and ordinary meaning of the phrase "in or within five (5) miles" unambiguously requires a straight-line distance in the interpretation of an employment contract).

{¶58} This court has also adopted the straight-line measurement with respect to a non-competition agreement. *Frederick D. Harris, M.D., Inc. v. Univ. Hosps.*, 8th Dist. Cuyahoga Nos. 76724 and 76785, 2002-Ohio-983. In that case, where the non-competition agreement did not specify the manner in which to measure the distance, we rejected the drive distance method of computing distance between two office locations, stating that "[c]ase law has been historically uniform in rejecting this theory and in holding that the correct way to measure the distance between locations is as the crow flies, or the straight-line approach used by a surveyor. *Id.* at ¶ 20.

{¶59} Significantly, an appellate court impliedly adopted the use of a straight-line method of measurement as it applied to a relocation protest under R.C. 4517.50. *Fleisher v. Ford Motor Co.*, 10th Dist. Franklin No. 09AP-139, 2009-Ohio-3846. In that case, the section of the statute at issue was R.C. 4517.50(C)(1), which provides that the

notice requirements outlined in R.C. 4517.50(A) do not apply to "[t]he relocation of an existing new motor vehicle dealer within one mile from the existing location."

**{¶60}** In *Fleisher*, Rouen Lincoln Mercury sold its dealership to Brondes Ford. Brondes then moved the Lincoln Mercury dealership to the Brondes Ford location. Both dealerships were within the relevant market area of another Lincoln Mercury dealership, which was owned by Robert Fleisher. Fleisher protested the relocation, alleging that Ford violated the statute by failing to provide Fleisher notice of the relocation. Ford obtained a straight-line measurement of the distance between Rouen Lincoln Mercury location and Brondes Ford, which revealed that the distance was .54 miles.

**{¶61}** Based upon this measurement, Ford moved to dismiss the protest. Relying on Ford's measurement and R.C. 4517.50(C)(1), the hearing examiner found that because the relocation was less than one mile, the notice requirement of R.C. 4517.50 did not apply, and as a result, Fleisher had no right to protest. *Id.* at ¶ 7. The Board adopted the hearing examiner's report and recommendation that Fleisher's protest be dismissed. *Id.* at ¶ 8. Fleisher then appealed the Board's decision, which was upheld by the trial court. Upon further appeal, the Tenth District Court of Appeals affirmed the trial court's decision, stating that "it is undisputed that the new Brondes dealership was less than one mile away from the existing Brondes dealership" and, therefore, R.C. 4517.50(C)(1) exempted Ford from the notice requirements. *Fleisher* at ¶ 14. It is therefore clear from this decision that the Tenth District relied on Ford's straight-line measurement between

locations in order to find that the exception to the notice requirements of R.C. 4517.50 applied to Ford's relocation.

**{¶62}** Additionally, in looking at the statute itself, we do not find that the language in the statute expressly indicates an intent to define "further" as measured by distance traveled, rather than straight-line measurement. And if the legislature had intended to require the use of road miles for purposes of applying the exception outlined in R.C. 4517.50(C)(3), it would have used a phrase more explicitly indicating that intent. *See Shepherd*, 61 Ohio St.2d at 331, 401 N.E.2d 934.

**{¶63}** Moreover, the language in other parts of the statute suggests a straight-line measurement for distances between two locations. R.C. 4517.50 (DD) defines "relevant market area" as an area within a radius of ten miles from the site of the existing dealer. As previously outlined, courts have applied the ordinary meaning of the term "within" and determined that the straight-line approach is the proper method of measurement where that term is used. Reading R.C. 4517.50(DD) in conjunction with R.C. 4517.50(C)(3), as we are required to do, we find that the legislature intended "further" to be defined in the same manner. *See Sims v. Nissan North Am., Inc.*, 10th Dist. Franklin Nos. No. 12AP-833, 12AP-835, 2013-Ohio-2662, ¶ 32 (where statutes relate to one another, they should be read together); *Chrysler Corp. v. Bowshier*, 10th Dist. Franklin No. 01AP-921, 2002-Ohio-1443 (because R.C. 4517.65(A) and (B) relate to one another, they must be read together); R.C. 1.42 (words and phrases must be read in context and construed according to the rules of grammar and common usage).

{¶64} In support of its argument that "further" should be defined by the distance traveled, North Olmsted Nissan cites to *Bd. of Edn. v. Bd. of Edn.,* 58 Ohio St. 390, 50 N.E. 812 (1898). In that case from 1898, the Ohio Supreme Court defined "further" as requiring a measurement by the nearest practical traveled route as applied to a statute that permitted kindergarten students to attend a school outside of their district if the closest school in their district was "further." The court reasoned that because the legislation "provides for the convenience of children," the distance "is to be taken as they travel along the most direct public highway." *Id.* at 394. In reaching its decision, the court determined that the statute demonstrated an intent that a measurement other than a straight line be used. And the intent of a statute is, in fact, controlling. *Jordan*, 89 Ohio St.3d at 491, 2000-Ohio-225, 733 N.E.2d 601. By contrast, R.C. 4517.50(C)(3) does not express such an intent, and therefore, we apply the straight-line measurement in defining distance. *Shepherd*, 61 Ohio St.2d at 331, 401 N.E.2d 934; *Messina*, 10th Dist. Franklin No. 10AP-37, 2010-Ohio-4741.

{¶65} Finally, North Olmsted Nissan argues that industry standards establish that drive distance or travel time is the preferred method of measurement in the motor vehicle industry. In support of its argument, North Olmsted Nissan provided the expert testimony of John Matthews. This testimony, however, is irrelevant to the court's interpretation of R.C. 4517.50(C)(3). Statutory interpretation of undefined terms in a statute is a question of law, not of fact. *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317; 981 N.E.2d 795, ¶ 31, citing *Akron Centre Plaza, L.L.C. v. Summit*

*Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054.   Moreover, it is error for a court to allow an expert "to interpret for the jury what the statute requires." *Kraynak v. Youngstown City Sch. Dist. Bd. of Edn.,* 118 Ohio St.3d 400, 2008-Ohio-2618; 889 N.E.2d 528, ¶ 21.

{¶66} Based upon the foregoing, we find that the trial court correctly interpreted R.C. 4517.50(C)(3) in defining "further" as measured by a straight line from the closest point of an existing line-make new motor vehicle dealer to the closest point of a relocating line-make new motor vehicle dealer.   North Olmsted Nissan's second assignment of error is therefore overruled.

{¶67} Applying this definition to Middleburg Heights Nissan's proposed relocation site of 13930 Brookpark Road, we find that the trial court correctly concluded that the property located at 13930 Brookpark Road, Cleveland, Ohio, is "further" from North Olmsted Nissan's dealership at 28500 Lorain Road, North Olmsted, Ohio, than Middleburg Heights Nissan's current dealership located at 7168 Pearl Road, Middleburg Heights, Ohio.   Middleburg Heights Nissan offered evidence that the distance, as measured by a straight line, from the closest point of the property located at 28500 Lorain Road to the closest point of the property located at 7168 Pearl Road is 7.43 miles.   The evidence also showed that the distance from the closest point of the property located at 28500 Lorain Road to the closest point of the property located at 13930 Brookpark Road is 7.61 miles.   North Olmsted Nissan did not dispute this evidence.

**{¶68}** Accordingly, this court affirms the declaratory judgment of the trial court on Counts 1 and 2 of the complaint.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR