[Cite as *Ginn v. Stonecreek Dental Care*, 2015-Ohio-4452.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| DAVID R. GINN, DDS, | : | |
| Appellant/Cross-Appellee, | : | CASE NOS. CA2015-01-001<br>CA2015-01-002 |
| | : | O P I N I O N |
| - vs - | | 10/26/2015 |
| | : | |
| STONECREEK DENTAL CARE, et al., | : | |
| Appellee/Cross-Appellant. | : | |


CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 12CVH00495


Law Offices of Russell A. Kelm, Russell A. Kelm, 37 West Broad Street, Suite 860, Columbus, Ohio 44131, for appellant/cross-appellee

Colleen Koehler, 6480 Rockside Woods Boulevard, South, Suite 350, Independence, Ohio 44131, for appellant/cross-appellee

Jeffrey R. Teeters, 600 Vine Street, Suite 2010, Cincinnati, Ohio 45202, for defendant-appellee, Stonecreek Dental Care

Isaac Wiles Burkholder & Teetor, LLC, Dale D. Cook and Michael L. Close, Two Miranova Place, Suite 700, Columbus, Ohio 43215, appellee/cross-appellant, R. Douglas Martin, DDS


**S. POWELL, P.J.**

{¶ 1} Appellant/cross-appellee, David R. Ginn, DDS, appeals from a judgment entry issued in the in Fayette County Court of Common Pleas relating to the sale of a dental practice. Appellee/cross-appellant, R. Douglas Martin, DDS, also appeals. For the reasons

discussed below, we affirm.

{¶ 2} In 2010, Dr. Martin sold his long-time dental practice, located in Washington Court House, to Dr. Ginn. Dr. Ginn had an already established dental practice in Washington Court House that he wanted to expand through the purchase. When Dr. Martin sold his practice to Dr. Ginn, the parties signed a contract for sale that contained a noncompete provision prohibiting Dr. Martin from engaging in business "within thirty (30) miles" of Dr. Ginn's practice for "five (5) years" from October 2010. The contract for sale also contained a provision entitling the prevailing party, in case of litigation, to recover attorney fees.

{¶ 3} As a part of the transition, Dr. Martin agreed to work for Dr. Ginn one day per week, and the parties signed a separate employment agreement. For various reasons, the relationship between Dr. Ginn and Dr. Martin deteriorated. As a result, Dr. Martin's employment with Dr. Ginn ended in April 2011. Soon thereafter, Dr. Martin began working for another dental office, Stonecreek Dental Care, in Chillicothe. The distance between Dr. Ginn's office and Stonecreek Dental's Chillicothe office is less than 30 miles when measuring the distance in a straight line. However, when driving between the two offices, the distance travelled is more than 30 miles.

{¶ 4} Dr. Ginn filed claims against Dr. Martin and Stonecreek Dental in 2012.[1] Relevant to this appeal, Dr. Ginn alleged that by working for Stonecreek Dental, Dr. Martin breached the noncompete provision in the contract for sale. Prior to trial, the trial court held a hearing to discuss legal issues in the case, including the meaning of the phrase "within thirty (30) miles" in the noncompete provision. The trial court found the phrase clearly referred to a straight-line distance as opposed to a driving distance. In determining the

---

1. Dr. Ginn alleged Stonecreek Dental tortiously interfered with the contract for sale between Dr. Ginn and Dr. Martin and tortiously interfered with the business relationships between Dr. Ginn and his patients. In addition to employing Dr. Martin, Stonecreek Dental produced radio advertisements using Dr. Martin's voice that were broadcast in the Washington Court House area.

- 2 -

meaning, the trial court stated that it "may not use extrinsic evidence to create an ambiguity" and found the phrase unambiguous and plain on its face.

{¶ 5} On May 20, 2014, a jury trial began on Dr. Ginn's claims against Dr. Martin and Stonecreek Dental. After Dr. Ginn presented testimony and evidence, Dr. Martin moved for a directed verdict. Dr. Martin argued Dr. Ginn failed to show that damages were proximately caused by the alleged breach of contract and that he further failed to establish damages to a reasonable degree of certainty. The trial court denied Dr. Martin's motion.[2] After Dr. Martin presented a defense, the jury found he breached the noncompete provision and awarded Dr. Ginn $125,000 in damages, plus interest.

{¶ 6} Following trial, Dr. Martin filed a motion for judgment notwithstanding the verdict and Dr. Ginn requested attorney fees. The trial court overruled Dr. Martin's motion for judgment notwithstanding the verdict and granted Dr. Ginn's motion for attorney fees in the amount of $95,988, which was less than Dr. Ginn's requested amount of $143,595, plus out-of-pocket expenses. In making its calculation, the trial court reduced the hourly rate of Dr. Ginn's out-of-county attorneys, and instead used an hourly rate of an attorney practicing in Fayette County. The trial court also declined to compensate Dr. Ginn for out-of-pocket expenses.

{¶ 7} Dr. Ginn now appeals, asserting a single assignment of error. Additionally, Dr. Martin cross-appeals, asserting three cross-assignments of error. For ease of analysis, we will combine Dr. Martin's second and third cross-assignments of error.

{¶ 8} Dr. Ginn's Assignment of Error No. 1:

---

2. At the conclusion of Dr. Ginn's case, Stonecreek Dental also moved for a directed verdict. The trial court granted a directed verdict in favor of Stonecreek Dental, finding Dr. Ginn failed to show Stonecreek Dental possessed the requisite intent to interfere with either business relationships between Dr. Ginn and his patients or the contract for sale between Dr. Ginn and Dr. Martin. Dr. Ginn appealed. On appeal, we affirmed the trial court's grant of a directed verdict regarding the tortious interference with business relationships claim, but reversed the trial court's grant of a directed verdict in regard to the tortious interference with contract claim. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2014-06-015, 2015-Ohio-1600.

**{¶ 9}** THE TRIAL COURT ABUSED ITS DISCRETION IN REDUCING THE AWARD OF ATTORNEYS' FEES TO AN HOURLY RATE OF $250.00 BASED ON FAYETTE COUNTY RATES.

**{¶ 10}** In his sole assignment of error, Dr. Ginn argues the trial court erred in calculating the amount of attorney fees it ordered Dr. Martin to pay. Specifically, Dr. Ginn asserts the trial court should have used the actual rate charged by Dr. Ginn's Columbus-based attorneys in calculating the award of attorney fees rather than using an hourly rate of a Fayette County attorney of $250. We disagree.

**{¶ 11}** We review a trial court's determination regarding attorney fees for an abuse of discretion. *Bittner v. TriCounty Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Generally, under the American Rule, unless a statute or enforceable contract provides for the recovery of attorney fees, each party is responsible for his or her own attorney fees. *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33 (1987). Contractual provisions allowing the prevailing party to recover attorney fees are enforceable when the contract was entered freely by parties with equal bargaining power so long as the fees are fair, just, and reasonable. *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 8.

**{¶ 12}** Determining the reasonableness of attorney fees involves a two-step process. *Bergman Group v. OSI Dev., Ltd.*, 12th Dist. Butler No. CA2009-12-080, 2010-Ohio-3259, ¶ 68; *Bittner* at 145. First, the trial court must calculate the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Id.* The calculation provides the trial court with an objective, initial estimate of the value of the attorney's services. *Id.* Unreasonably expended hours are not included in the calculation, which include hours that

are duplicative, redundant, unnecessary, or excessive. *Gibney v. Toldeo Bd. of Edn.*, 73 Ohio App.3d 99, 108 (6th Dist.1991). Second, the trial court may modify its initial calculation after contemplating the factors set forth in Prof.Cond.R. 1.5 (formerly DR 2-106[B]). *Bergman* at ¶ 70; *Bittner* at paragraph one of the syllabus. Factors in Prof.Cond.R. 1.5(a) include the following:

> (1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)  the fee customarily charged in the locality for similar legal services;
>
> (4)  the amount involved and the results obtained;
>
> (5)  the time limitations imposed by the client or by the circumstances;
>
> (6)  the nature and length of the professional relationship with the client;
>
> (7)  the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8)  whether the fee is fixed or contingent.

It is within the trial court's discretion to decide which of the factors listed in Prof.Cond.R. 1.5 to apply and what impact those factors have on its analysis. *Bergman* at ¶ 70.

{¶ 13} In this instance, the trial court considered the legal memoranda filed by the parties outlining the hours spent on the case by Dr. Ginn's attorneys. The trial court found the number of hours reasonably spent on the case was the number proposed by Dr. Ginn minus out-of-pocket expenses because, while the contract for sale provided for the recovery of attorney fees, recovery of out-of-pocket expenses was not included. The trial court then multiplied the hours by $250. The trial court explained that $250 is the rate attorneys charge

in the Fayette County area. The trial court further stated that it considered the factors outlined in the Rules of Professional Conduct and that there was "nothing complex in this simple breach of contract litigation." In doing so, the trial court complied with the two-step process outlined in *Bittner* and did not abuse its discretion in awarding attorney fees to Dr. Ginn in the amount of $95,988. Accordingly, Dr. Ginn's single assignment of error is overruled.

{¶ 14} Dr. Martin's Cross-assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED IN OVERRULING DR. MARTIN'S MOTION FOR DIRECTED VERDICT AND JNOV IN THE ABSENCE OF ANY ADMISSIBLE EVIDENCE OF LOST PROFIT.

{¶ 16} In his first cross-assignment of error, Dr. Martin argues Dr. Ginn only presented evidence as to lost revenues as opposed to lost profits. As such, Dr. Martin asserts the trial court should have granted him a directed verdict or a judgment notwithstanding the verdict. We disagree.

{¶ 17} A question of law is presented when reviewing a denial of a motion for a directed verdict or a motion for judgment notwithstanding the verdict, and thus, our standard of review on appeal is de novo. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, ¶ 22. On appeal, the evidence must be construed in favor of the nonmoving party and be legally sufficient to sustain the verdict. *Id.* at ¶ 23. In conducting such a review, we are to neither consider the weight of the evidence nor the credibility of witnesses. *Osler v. Lorain*, 28 Ohio St.3d 345 (1986), syllabus.

{¶ 18} "It has been consistently held in Ohio that in a breach of a covenant not to compete, the usual measure of damages is lost profits." *Briggs v. GLA Water Mgt.*, 6th Dist. Wood Nos. WD-12-062 and WD-12-063, 2014-Ohio-1551, ¶ 30. Expert testimony using certain types of methodology may be used to calculate lost profits. *Harris v. Univ. Hospitals*

*of Cleveland*, 8th Dist. Cuyahoga Nos. 76724 and 76785, 2002 WL 363593, at *9 (Mar. 7, 2002). However, as we held in a related appeal, mathematical certainty is not required when calculating damages. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2014-06-015, 2015-Ohio-1600, ¶ 24. Furthermore, when an established business is involved, the loss of profits usually can be proven with sufficient certainty as evidence of past performance will form the basis for a reasonable prediction as to the future. *Id.*; Restatement of the Law 2d, Contracts, Section 352, Comment b (1981); *see AGF, Inc. v. Great Lakes Heat Treating Co.*, 51 Ohio St.3d 177, 181 (1990).

{¶ 19} In this instance, Dr. Ginn testified to historical revenues prior to purchasing Dr. Martin's practice. Dr. Ginn then testified to the amount of revenue gained during the time Dr. Martin practiced with him, and compared these numbers to his revenue for five years, the length of time Dr. Martin was prohibited from practicing dentistry within 30 miles of Dr. Ginn's practice as stated in the noncompete provision. To determine the amount of revenue Dr. Martin would have generated in a year, Dr. Ginn testified that he took revenue generated by Dr. Martin for the six months he worked and doubled it to determine how much revenue Dr. Martin generated for that year and compared it to his actual and projected revenue. Dr. Ginn testified that the revenue represented lost profits because his overhead did not change.

{¶ 20} Dr. Ginn's testimony presented a proper basis to calculate damages as past performance is indicative of future performance. Whether the revenues actually represented lost profits as testified to by Dr. Ginn relates to Dr. Ginn's credibility and was for the jury to decide. Construing the evidence in Dr. Ginn's favor, we find sufficient evidence to support that lost profits could be calculated to a reasonable degree of certainty. Consequently, Dr. Martin's first cross-assignment of error is overruled.

{¶ 21} Dr. Martin's Cross-assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED IN ENFORCING THE NON-COMPETE CLAUSE

AS THERE WAS NO MEETING OF THE MINDS AS TO THE GEOGRAPHICAL LIMITATION IN THE NON-COMPETE CLAUSE.

{¶ 23} Dr. Martin's Cross-assignment of Error No. 3:

{¶ 24} THE TRIAL COURT ERRED IN REFUSING TO CONSIDER PAROL EVIDENCE AS TO THE MEANING OF THE GEOGRAPHICAL LIMITATION IN THE NON-COMPETE CLAUSE.

{¶ 25} In his second and third cross-assignments of error, Dr. Martin argues the trial court erred in enforcing the contract's noncompete provision. Specifically, Dr. Martin asserts the trial court should have considered parol evidence when interpreting the noncompete provision because the noncompete provision was not fully integrated into the contract and the phrase "within 30 miles" contained in the noncompete provision is ambiguous. We disagree.

{¶ 26} "Contract interpretation is a matter of law, and questions of law are subject to de novo review on appeal." *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38. Generally, when interpreting a contract, the intent of the parties is presumed to be contained in the language of the contract itself. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). Typically, the parol evidence rule prohibits the use of extrinsic evidence when interpreting terms of a contract. *Underwood v. Boeppler*, 12th Dist. Butler No. CA2014-02-055, 2015-Ohio-156, ¶ 9. The parol evidence rule provides, "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000).

{¶ 27} Parol evidence may be considered, however, when a contract has not been fully integrated. *Underwood* at ¶ 10. Integration is the act of embodying the complete terms of an agreement to writing. *Id.* Partial integration occurs when the writing does not fully

express the parties' intent and the entire agreement has not been reduced to writing. *Id.* Additionally, the parol evidence rule does not prohibit a court from considering extrinsic evidence to aid in interpreting an ambiguous or unclear contract. *Shiffrin* at 638. In determining whether a contract is ambiguous, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 28} In this instance, Dr. Martin asserts that because he and Dr. Ginn interpreted the clause "within 30 miles" differently, there was no "meeting of the minds" to create an integrated contract. However, there is no indication that the contract was not a full integration of the parties' intent or that an additional agreement existed outside of the contract that would alter the distance requirement contained in the noncompete provision. In fact, the contract for sale specifically states, "This writing is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms of their agreement." The contract for sale also states, "This Agreement can be modified or rescinded only by a writing signed by both parties or their duly sworn authorized agents."

{¶ 29} Furthermore, Ohio courts have consistently applied the ordinary meaning of the term "within" when discussing distance requirements and found that the term refers to a straight-line distance as opposed to driving distance. *See State v. Shepherd*, 61 Ohio St.2d 328, 331 (1980) ("Webster's Third New International Dictionary (1961) defines 'within' as 'in the limits or compass of.' * * * The common understanding of the phrase 'within three miles' is that it refers to straight-line distance."); *see also State ex rel. O'Brien v. Messina*, 10th Dist. Franklin No. 10AP-37, 2010-Ohio-4741, ¶ 16; *M6 Motors, Inc. v. Nissan of N. Olmsted, LLC*, 8th Dist. Cuyahoga No. 100684, 2014-Ohio-2537; *Drs. Guren, Jaffe & Assoc., Inc. dba Am.*

*Dental Ctrs. v. Phillip*, 11th Dist. Lake No. 10-112, 1984 WL 7300, at *1 (Oct. 5, 1984); *Harris*, 2002 WL 363593, at *6.

{¶ 30} Therefore, the phrase "within 30 miles" is plain on its face and unambiguous. Because the noncompete provision was fully integrated into the contract and the meaning of the phrase "within 30 miles" is plain on its face, the parol evidence rule applies and the contract for sale as a final written agreement may not be supplemented by extrinsic evidence. Consequently, the trial court did not err in interpreting the distance requirement contained in the noncompete provision as a straight-line distance. Accordingly, Dr. Martin's second and third cross-assignments of error are overruled.

{¶ 31} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.