[Cite as *Ginn v. Stonecreek Dental Care*, 2019-Ohio-3229.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

|  |  |  |
|---|---|---|
| DAVID R. GINN, DDS, | : | |
| Appellant and Cross-Appellee, | : | CASE NOS. CA2018-09-018 |
| | | CA2018-09-019 |
| | : | CA2018-11-022 |
| - vs - | | |
| | : | O P I N I O N |
| | | 8/12/2019 |
| STONECREEK DENTAL CARE, | : | |
| Appellee and Cross-Appellant. | : | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 12-CVH-459

Law Offices of Russell A. Kelm, Russell A. Kelm, Ian M. King, 37 West Broad Street, Suite 860, Columbus, Ohio 43215, for appellant and cross-appellee

Carpenter Lipps & Leland LLP, Michael H. Carpenter, Katheryn M. Lloyd, Jonathan N. Bond, 280 North High Street, Suite 1300, Columbus, Ohio 43215; Wood & Lamping, Jeffrey R. Teeters, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, for appellee and cross-appellant

**HENDRICKSON, P.J.**

{¶ 1} Plaintiff/Appellant/Cross-Appellee, David R. Ginn, D.D.S., and Defendant/Appellee/Cross-Appellant, Stonecreek Dental Care ("Stonecreek Dental"), appeal various findings and rulings made by the trial court below regarding a jury verdict rendered in favor of Dr. Ginn and against Stonecreek Dental. For the reasons set forth below, we affirm the trial court's rulings.

{¶ 2} This is the fourth appeal involving a lawsuit that was initially filed in 2012. The dispute arose from the sale of Defendant R. Douglas Martin, D.D.S.' dental practice in Washington Courthouse to Dr. Ginn. One of the terms of the sale and purchase agreement was a noncompete clause that prohibited Dr. Martin from practicing dentistry within 30 miles of Dr. Ginn's office.

{¶ 3} It is undisputed that Dr. Martin eventually entered into an employment contract with the Chillicothe office of Stonecreek Dental, which then began to air radio commercials using Dr. Martin's voice, which were broadcast in the Washington Courthouse area. This resulted in Dr. Ginn filing a complaint against Dr. Martin for breach of contract (noncompete) and against Stonecreek Dental for tortious interference with business relationships (between Dr. Ginn and his clients) and tortious interference with a contract (interfering with the noncompete clause of Dr. Ginn's purchase agreement with Dr. Martin).[1]

{¶ 4} The matter proceeded to a jury trial in May 2014. After Dr. Ginn presented his case in chief, both Dr. Martin and Stonecreek Dental moved for a directed verdict claiming Dr. Ginn failed to (1) offer sufficient evidence to prove certain elements of his claims, (2) show that damages were proximately caused by the alleged breach of contract and, (3) establish damages to a reasonable degree of certainty. The trial court denied Dr. Martin's motion but granted Stonecreek Dental's motion finding that Dr. Ginn failed to show Stonecreek Dental possessed the requisite intent to interfere. The jury ultimately rendered a verdict in favor of Dr. Ginn in the sum of $125,000 against Dr. Martin for breach of the non-compete provision. Dr. Martin then filed a motion for judgment notwithstanding the verdict

---

1. Dr. Ginn sued "Stonecreek Dental Care," the registered trade name used by a group of dental offices located in Pickerington, Ashland, Xenia, Newark, and most relevant to this appeal, Chillicothe. Each of the offices is owned or operated by a separate corporation or limited liability company. The trade name is registered to and owned by J. Clarke Sanders DDS Inc. In turn, that corporation is owned by two dentists, Dr. J. Clarke Sanders and Dr. Erin Biehle.

which was denied by the trial court. Dr. Martin appealed in *Ginn I* and this court affirmed the trial court's rulings and the verdict as it applied to Dr. Martin.[2]

{¶ 5} In *Ginn II*, Dr. Ginn appealed the trial court's decision granting Stonecreek Dental's motion for a directed verdict. In April of 2015, this court upheld the trial court's ruling as to Dr. Ginn's tortious interference with business relationships claim but reversed the lower court's ruling on Dr. Ginn's tortious interference with a contract claim and remanded the matter for further proceedings.[3]

{¶ 6} On remand, Stonecreek Dental moved for summary judgment claiming the trial court would be relitigating damages already awarded from the previous trial, and the trial court granted summary judgment. As it relates to this present appeal, Dr. Ginn appealed and in June 2017, in *Ginn III*, this court reversed the trial court's decision granting summary judgment in favor of Stonecreek Dental and remanded the matter for further proceedings.[4]

{¶ 7} On the second remand, Dr. Ginn moved to compel responses to his discovery demands for the financial records of various business entities and individuals that own or have used the trade name "Stonecreek Dental Care."[5] Dr. Ginn claimed he needed this information to establish his punitive damage claim against Stonecreek Dental. In denying the motion, the trial court concluded that Dr. Ginn had the opportunity to discover this information earlier in the case and had not presented good cause for reopening discovery.

---

2. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette Nos. CA2015-01-001, CA2015-01-002, 2015-Ohio-4452, appeal not accepted, 145 Ohio St.3d 1422, 2016-Ohio-1173.

3. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2014-06-015, 2015-Ohio-1600.

4. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2016-10-014, 2017-Ohio-4370

5. In *Ginn III*, Dr. Ginn also appealed the court's alleged error concerning a similar, earlier motion to compel. Following the first remand, Dr. Ginn had moved to compel discovery of Stonecreek's financial records and, apparently, the court orally granted this motion. However, the court never reduced that decision to a journal entry and those documents were not produced to Dr. Ginn before the trial court awarded Stonecreek summary judgment.

{¶ 8} The matter proceeded to a second jury trial solely on Dr. Ginn's tortious interference with a contract claim against Stonecreek Dental. The jury rendered a verdict in favor of Dr. Ginn and awarded him $1,500,000 in compensatory damages. Subsequently, Dr. Ginn presented evidence related to his claim for punitive damages, which consisted of brief testimony from Dr. J. Clarke Sanders, one of the managers and owners of Stonecreek Dental. Dr. Sanders testified as to the total revenue of all five dental offices that operated under the Stonecreek Dental Care trade name. The jury did not award punitive damages.

{¶ 9} Later, Dr. Ginn moved for an award of prejudgment interest on the jury verdict, which the trial court denied. The trial court then entered final judgment in favor of Dr. Ginn and against "Defendant, Stonecreek Dental Care." After the entry of the verdict, Stonecreek Dental moved the trial court to correct the judgment entry to reflect that the defendant's legal name was "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC," the limited liability company that operated the Stonecreek Dental office in Chillicothe. This was also the entity that had entered into the employment contract with Dr. Martin. Stonecreek Dental argued that "Stonecreek Dental Care" was merely a trade name and any judgment against the trade name was void. Dr. Ginn opposed this motion arguing that he had intentionally sued the trade name for strategic purposes and that he had not sued, nor intended to sue, the Chillicothe limited liability company. The trial court denied Stonecreek Dental's motion to correct the judgment entry.

{¶ 10} Dr. Ginn appeals, raising three assignments of error and Stonecreek Dental also appeals raising three cross-assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN OVERRULING DR. GINN'S MOTION TO AWARD PREJUDGMENT INTEREST AGAINST STONECREEK ON THE JURY VERDICT.

{¶ 13} Dr. Ginn argues that the trial court erred in failing to award him prejudgment interest on the jury verdict because his claim against Stonecreek Dental arose out of a contract and therefore he was statutorily entitled to prejudgment interest pursuant to R.C. 1343.03(A). Dr. Ginn further contends that he was entitled to prejudgment interest based on Stonecreek Dental's failure to engage in good faith settlement efforts, pursuant to R.C. 1343.03(C).

R.C. 1343.03(A)

{¶ 14} Initially, Dr. Ginn concedes that prejudgment interest under R.C. 1343.03(A) is ordinarily limited to interest accruing on breach of contract claims. However, he argues that his claim against Stonecreek Dental for tortious interference with a contract, "arose out of" his contractual agreement with Dr. Martin and therefore falls within the ambit of R.C. 1343.03(A).

{¶ 15} R.C. 1343.03(A) provides:

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, *when money becomes due and payable* upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

(Emphasis added).

{¶ 16} The statute does not use the terms "prejudgment" or "postjudgment." Instead, it provides for interest at the statutory rate beginning when "money becomes due and

payable" on written instruments, accounts, settlements, verbal agreements, as well as on judicial decrees or judgments for the payment of money arising out of tort or contract. Effectively, the statute incentivizes one to keep financial promises or otherwise interest will be added to the past-due amount from the date of nonpayment. The statute further encourages payment of money judgments resulting from tort or contract claims because, again, failure to do so will result in added interest. In this regard, this court and others have held that R.C. 1343.03(A) only provides for postjudgment interest on tort claims. *Hance v. Allstate Ins. Co.*, 12th Dist. Clermont No. CA2008-10-094, 2009-Ohio-2809, ¶ 7, fn 2; *Shelly Materials, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Portage No. 2013-P-0016, 2013-Ohio-5654, ¶ 59.

{¶ 17} There was no written instrument, account, settlement, or verbal agreement entered between Dr. Ginn and Stonecreek Dental and thus no money could become "due and payable" with respect to any of those items. Dr. Ginn did obtain a money judgment against Stonecreek Dental "arising out of tortious conduct." However, this money judgment only became due and payable after the jury found Stonecreek Dental liable and the entry of its verdict. Therefore, pursuant to *Hance*, Dr. Ginn could only be entitled to postjudgment interest on the money judgment.

{¶ 18} Dr. Ginn argues that "R.C. 1343.03(A) provides that a trial court has the mandatory obligation to award prejudgment interest starting from the date that the claim begins to accrue, i.e., the date that the defendant acted against the plaintiff causing injury, until the entry of the judgment." Dr. Ginn does not cite any specific portion of the statute or any other authority for this assertion and there is no support for this interpretation based on a plain reading of the statute. The statute does not refer to injuries or claims as the basis for an award of interest but permits interest on judgments resulting from tortious claims.

{¶ 19} Dr. Ginn also cites an Eighth District Court of Appeals case where prejudgment interest was awarded on a tortious interference with business relationships claim. *Chandler & Assoc. v. America's Healthcare Alliance*, 125 Ohio App.3d 572 (8th Dist.1997). However, the statutory basis upon which the trial court awarded prejudgment interest is not indicated in that decision. The appeals court cited both the (A) and (C) subsections of R.C. 1343.03. *Id.* at 591. Regardless, the specific issue of whether prejudgment interest was permitted on a tort claim under R.C. 1343.03(A) was not addressed by the court. In sum, this court concludes that Dr. Ginn was not entitled to prejudgment interest under a plain reading of R.C. 1343.03(A).

## R.C. 1343.03(C)

{¶ 20} Next, Dr. Ginn argues that the trial court abused its discretion in declining to award him prejudgment interest pursuant to R.C. 1343.03(C), i.e., because of Stonecreek Dental's alleged failure to make a good faith effort to settle his claim prior to trial.

{¶ 21} R.C. 1343.03(C) provides that a court may order prejudgment interest on money judgments in tortious civil actions where the court determines, after a hearing, "that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case* * *." The purpose of R.C. 1343.03(C) is "to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting." *Kalain v. Smith*, 25 Ohio St.3d 157, 159 (1986).

{¶ 22} The Ohio Supreme Court has held that "[a] party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery

proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Id.* at syllabus.

{¶ 23} The burden of proof is on the party seeking prejudgment interest. *Moskovitz v. Mt. Sinai Medical Ctr.*, 69 Ohio St.3d 638, 659 (1994).

> [I]t is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle. Other factors would include responses -- or lack thereof -- and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient. These factors, and others where appropriate, should also be considered by a trial court in making a prejudgment interest determination.

*Id.* This court's review of a trial court's decision on a motion for prejudgment interest under R.C. 1343.03(C) is for an abuse of discretion. *Id.* at 658.

{¶ 24} The trial court found that Stonecreek Dental cooperated in discovery and complied with its discovery motions. Dr. Ginn argues that Stonecreek Dental did not cooperate in discovery because it refused to supply requested financial information concerning all of the various "owners and users" of the Stonecreek Dental Care trade name. However, Dr. Ginn moved the trial court to compel discovery with respect to this specific discovery dispute. After a hearing, the trial court denied Dr. Ginn's motion on the basis that it was untimely. Therefore, Stonecreek Dental acted in compliance with the trial court's discovery ruling.

{¶ 25} The trial court also found that Stonecreek Dental did not delay the proceedings

and that any delay of the proceedings was not the fault of Stonecreek Dental. The trial court further found that Stonecreek Dental did not fail to make a good faith effort to settle based on its evaluation of its potential liability. There is evidence in the record to support this finding, i.e., the claims against Stonecreek Dental were twice dismissed and only revived after appellate review. Finally, and most significantly, the evidence admitted during the hearing revealed that neither Dr. Ginn nor Stonecreek Dental ever exchanged a single settlement offer. At best, Dr. Ginn implied to Stonecreek Dental that it would take a substantial monetary offer to settle the case prior to trial. This does not indicate a good faith effort to settle the case on Dr. Ginn's part. This court finds nothing that would suggest that the trial court abused its discretion in denying Dr. Ginn's motion for prejudgment interest under R.C. 1343.03(C). This court overrules Dr. Ginn's first assignment of error.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED BY DENYING DR. GINN'S MOTION TO COMPEL DISCOVERY AS TO STONECREEK TRADE NAME AND ITS OWNERS AND USERS.

{¶ 28} Dr. Ginn argues that the trial court abused its discretion in denying his motion to compel because he was entitled to discovery concerning the financial records of the various owners and entities using the Stonecreek Dental Care trade name as it was relevant to establishing Stonecreek Dental's net worth for purpose of a punitive damage award. Dr. Ginn further argues that the trial court erred in denying his motion on the basis that he could have sought the information earlier in the case because the trial court had not set a formal cut-off date for discovery.

{¶ 29} Trial courts are given broad discretion in the management of discovery. *Baker v. Meijer Stores Ltd. Partnership*, 12th Dist. Warren No. CA2008-11-136, 2009-Ohio-4681, ¶ 11. As a result, "an appellate court will not reverse a trial court's decision to sustain or

overrule a motion to compel discovery absent an abuse of discretion." *Stark v. Govt. Accounting Solutions, Inc.*, 10th Dist. Franklin No. 08AP-987, 2009-Ohio-5201, ¶ 14.

{¶ 30} This court finds no abuse of discretion in the trial court's decision to deny Dr. Ginn's motion to compel. Stonecreek Dental filed its answer to Dr. Ginn's complaint in January 2013. The first jury trial occurred some 16 months later. Presumably, all of Dr. Ginn's discovery should have been completed before the first trial commenced. Dr. Ginn presented no new claims against Stonecreek Dental in the second jury trial and therefore any information critical to the presentation of his case should have already been discovered. Dr. Ginn presented no evidence or rationale indicating why he could not have requested this information earlier. Additionally, the fact that the court had not set a formal discovery cut-off date is not unusual given that this motion to compel was filed in February 2018, on a remand following a jury trial. The trial court's decision was reasonable because Dr. Ginn had over a year to obtain this information through discovery prior to the first trial and therefore this court concludes that the trial court did not abuse its discretion in denying Dr. Ginn's motion to compel. Dr. Ginn's second assignment of error is overruled.

{¶ 31} Assignment of Error No. 3:

{¶ 32} THE TRIAL COURT ERRED IN LIMITING EXAMINATION AT TRIAL ON PUNITIVE DAMAGES AND DENYING SUCH INQUIRY AS TO DEFENDANT TRADE NAME AND ITS OWNERS AND USERS.

{¶ 33} Dr. Ginn argues that the trial court abused its discretion in disallowing him to question Dr. Sanders concerning Stonecreek Dental's "full financial status" during the trial on punitive damages. Specifically, Dr. Ginn contends that he was prejudiced by the trial court's decision to sustain an objection to a question concerning the combined net worth of the five Stonecreek Dental offices. Dr. Ginn claims that this decision prejudiced him because the jury

"would have likely awarded punitive damages against [Stonecreek Dental]" had they heard the "full ambit of financial evidence."

{¶ 34} The admission or exclusion of relevant evidence is a matter within the sound discretion of the trial court. *Williams v. Parker Hannifin Corp.*, 188 Ohio App.3d 715, 725, 2010-Ohio-1719, ¶ 41 (12th Dist.). This court reviews for an abuse of discretion, which indicates that the trial court acted arbitrarily, unreasonably, or unconscionably. *State ex rel. Beavercreek Twp. Fiscal Officer v. Graff*, 154 Ohio St.3d 166, 2018-Ohio-3749, ¶ 23.

{¶ 35} During the trial on punitive damages, Dr. Ginn elicited brief testimony from Dr. Sanders as to the total revenue of all the "entities that use the name Stonecreek Dental Care." Stonecreek Dental objected and the trial court overruled the objection. Dr. Sanders then testified that it was "maybe" $14 million in revenue for all five offices. Dr. Ginn continued with questions related to the net worth of all five Stonecreek Dental offices. Stonecreek Dental again objected and the trial court asked counsel to approach the bench.

{¶ 36} During the bench discussion, the trial court announced it was modifying its earlier ruling by sustaining Stonecreek Dental's objection in part. The court then stated that any further questions concerning Stonecreek Dental's financial status would be limited to Stonecreek Dental's Chillicothe office. The trial court informed Dr. Ginn that he could proffer the evidence he sought to admit. Dr. Ginn did not proffer the testimony. Dr. Sanders then answered questions regarding the net worth of the Stonecreek Dental Chillicothe office.

{¶ 37} This court concludes that regardless of whether the trial court erred in disallowing testimony as to the total net worth of the Stonecreek Dental offices, Dr. Ginn cannot demonstrate prejudice. First, he failed to proffer Dr. Sanders' testimony on the subject. Thus, this court would be required to speculate as to what Dr. Sanders would have testified to in order to find a changed outcome. Second, even if Dr. Sanders had testified to

a vast combined net worth between these offices, the jury heard Dr. Sander's testimony concerning a combined $14 million in revenue and nevertheless decided to award zero dollars in punitive damages. This suggests the jury's decision was premised on a lack of proof of malice, rather than Stonecreek Dental's financial status. Dr. Ginn does not cite any evidence in the record suggesting that Stonecreek Dental acted with malice. Therefore, this court overrules Dr. Ginn's third assignment of error and will now address Stonecreek Dental's three cross-assignments of error.

{¶ 38} Cross-Assignment of Error No. 1:

{¶ 39} THE TRIAL COURT ERRED IN ISSUING A FINAL JUDGMENT IN A FICTITIOUS NAME WHILE PLAINTIFF WAS ON ACTUAL NOTICE OF THE LEGAL NAME OF DEFENDANT, AND ABUSED ITS DISCRETION IN DECLINING TO CORRECT THE FACIAL DEFECT UNDER RULE 15 AND RULE 60 WHEN REQUESTED, AND/OR DECLINING TO VACATE A VOID JUDGMENT.

{¶ 40} Stonecreek Dental argues that the trial court erred in issuing a judgment entry against "Defendant, Stonecreek Dental Care." Stonecreek Dental argues that the trial court should have vacated the judgment entry as void because it was entered in favor of a nonentity trade name. Alternatively, Stonecreek Dental argues that the trial court should have either amended the complaint or issued a corrected judgment entry reflecting that the defendant was the limited liability company that operated Stonecreek Dental's Chillicothe office.

{¶ 41} In his 2012 complaint, Dr. Ginn named Dr. Martin and "Stonecreek Dental Care" as the two defendants. Dr. Ginn directed service of process for Stonecreek Dental to the Chillicothe address associated with Stonecreek Dental's Chillicothe office. Subsequently, "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC." answered the

complaint and admitted that it operated the dental office located at that Chillicothe address. Stonecreek Dental further expressly indicated in some initial filings that "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC." was the "correct" name of the defendant in the action. Thereafter, for the next six years of litigation, neither Dr. Ginn nor Stonecreek Dental sought to amend the pleadings to change or substitute the name of the defendant or add any defendants to the case.

{¶ 42} Nonetheless, the issue concerning which defendant Dr. Ginn had sued and whether there was a proper defendant before the trial court was discussed during the litigation. In September 2016, following the first remand of the case and prior to the second scheduled jury trial, the matter arose during a final pretrial conference and Dr. Ginn subsequently filed a "memorandum on the proper party defendant" and a related motion for default judgment.

{¶ 43} In the memorandum, Dr. Ginn explained that he intentionally sued the trade name "Stonecreek Dental Care" because "there was no way to know who the owner of the trade name was." Dr. Ginn then argued that the Chillicothe limited liability company that had appeared in the action was not the party he intended to sue and described it as a nonparty that had wrongfully appeared in the action. In the related motion for a default judgment, Dr. Ginn argued that the trade name had never answered the complaint and therefore asked the trial court to find the trade name in default and enter judgment in his favor.

{¶ 44} The trial court did not rule on Dr. Ginn's motion and implicitly denied it because it instead granted Stonecreek Dental's earlier filed motion for summary judgment and dismissed the case. Stonecreek Dental's summary judgment motion was premised on the argument that Dr. Ginn had already litigated the entirety of his damages in the case with Dr. Martin.

**{¶ 45}** Following this court's reversal of the summary judgment decision, the issue was once again discussed during a March 2018 motion to compel hearing, which motion was the subject of Dr. Ginn's second assignment of error in this appeal. That hearing occurred shortly before the second jury trial in April 2018. In discussing Dr. Ginn's argument relative to his ability to demand discovery from the various "owners and users" of the Stonecreek Dental Care trade name, the question arose as to whether Dr. Ginn had ever sought leave to add those parties to the case. In explaining his position, Dr. Ginn relayed that he chose to try his case against the trade name. Under his interpretation of Ohio law, one could sue a trade name and then seek judgment from the owners and users of the trade name. After hearing the arguments, the trial court denied Dr. Ginn's motion to compel. Following this denial, Dr. Ginn orally moved to amend the complaint to "include the additional parties that were discussed today." The trial court overruled the motion on the basis that it was untimely, would cause undue delay, and would be prejudicial to Stonecreek Dental.

**{¶ 46}** The matter proceeded to trial. There was some testimony which generally explained the corporate structure of the Stonecreek Dental group of dental practices, as well as its common ownership by Dr. Sanders and Dr. Biehle. However, the jury instructions referred to the defendant simply as "Stonecreek Dental Care." The jury signed a verdict form that listed "Stonecreek Dental Care" as the captioned defendant. Following the verdict, the trial court issued a final judgment entry granting judgment against "Defendant, Stonecreek Dental Care."

**{¶ 47}** Later, Stonecreek Dental moved for relief from judgment, asking the trial court to modify the defendant's name on the judgment entry to "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC." Alternatively, Stonecreek Dental moved the trial court to amend the pleadings to reflect that the defendant was the Chillicothe limited liability company

and not the trade name Stonecreek Dental Care. For procedural grounds, Stonecreek Dental cited Civ.R. 60(A) (to correct the judgment entry) and Civ.R. 15(B) (to amend the complaint).

{¶ 48} In response, Dr. Ginn filed a memorandum once again claiming that he had intentionally sued the trade name. He reiterated the argument that Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC. was not his intended defendant, had not been sued, and was essentially a nonparty that had purported to appear in the case.

{¶ 49} Stonecreek Dental responded by arguing that Dr. Ginn's "admission" that he had not sued the Chillicothe limited liability company deprived the trial court of personal jurisdiction over it. And because there were no other legal entities in the case other than the trade name, the entire case was void. On appeal, Stonecreek Dental reiterates these arguments.

<u>Void Judgment</u>

{¶ 50} Stonecreek Dental argues that the judgment against the trade name "Stonecreek Dental Care" is void as being rendered against a nonentity. Stonecreek Dental admits that the Revised Code permits an action to be brought against a fictitious business name but argues that Dr. Ginn thereafter had a duty to substitute the legal entity behind the trade name and failed to do so. Therefore, this court will examine whether Ohio law allows a lawsuit to be brought against and litigated to a judgment solely against a registered trade name or whether such a judgment is void.

{¶ 51} The pertinent law is within R.C. Chapter 1329, which addresses fictitious business and trade names and sets forth the rules regarding the registration of trade names with the Ohio Secretary of State. A "trade name" is a "name used in business or trade to designate the business of the user and to which the user asserts a right to exclusive use."

- 15 -

R.C. 1329.01(A)(1). A "fictitious name" is a "name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name." R.C. 1329.01(A)(2). Additionally, the statute provides a statutory definition for a "person," which definition includes both individuals as well as various business entities such as corporations and limited liability companies. R.C. 1329.01(A)(3).

{¶ 52} Relevant to this appeal are the (B) and (C) subsections of R.C. 1329.10, which is titled "actions by and against user of trade name or fictitious name." The (B) subsection provides that "[n]o person doing business under a trade name or fictitious name shall commence or maintain an action in the trade name or fictitious name in any court in this state or on account of any contracts made or transactions had in the trade name or fictitious name until it has first complied with section 1329.01 of the Revised Code * * *."[6] Stated otherwise, any "person" doing business under a trade name may "commence" and "maintain" a lawsuit in that trade name but only if the trade name is registered with the state.

{¶ 53} Next, R.C. 1329.10(C) provides: "[a]n action may be commenced or maintained against the user of a trade name or fictitious name whether or not the name has been registered or reported in compliance with section 1329.01 of the Revised Code."[7] This language, while ambiguous in some respects, indicates that a plaintiff is permitted to both "commence" and "maintain" a lawsuit against both trade names and fictitious names. The question becomes whether "maintained" could be interpreted to empower a plaintiff to sue a trade name only and ultimately receive a judgment against the trade name. The statute does not define "maintained" and thus this court looks to the plain and ordinary meaning of the

---

6. R.C. 1329.01 sets forth the rules regarding registering a trade name with the Ohio Secretary of State.

7. As will be discussed in more detail below, the Ohio Supreme Court has interpreted this statute to mean an action may be commenced and maintained against the fictitious or trade name itself, rather than limited to actions commenced against the "user of," or the legal entity behind, the fictitious name or trade name.

word.

**{¶ 54}** Webster's Dictionary provides the following definitions for "maintain":

> **1 :** to keep in a state of repair, efficiency, or validity **:** preserve from failure or decline * * * **2 a :** to sustain against opposition or danger **:** back up **:** DEFEND, UPHOLD * * * **b :** to uphold in argument **:** contend for * * * **3 :** to persevere in **:** carry on **:** keep up **:** CONTINUE * * * **4 :** to provide for **:** bear the expense of **:** SUPPORT * * * **5 :** to affirm in or as if in argument **:** ASSERT, DECLARE * * * **6 :** to assist (a party to legal action) so as to commit maintenance.

*Webster's Third New International Dictionary* 1362 (1993). In general, most of these definitions fall within the concept of "ensuring the survival of." Thus, an ordinary and plain interpretation of "maintained" as used in R.C. 1329.10(C) would support the conclusion that the Revised Code permits suit to be filed solely against a trade name and for such suit to be "maintained" through the entire course of an action and that a judgment ultimately rendered in such a suit is not void. Additionally, this court's interpretation is buttressed by R.C. 1329.10(B), which expressly permits suit to be brought and maintained by a registered trade name, but not a fictitious name. It would be inconsistent to conclude that, on one hand, the Revised Code recognizes a registered trade name as an entity that can bring an action and be awarded a judgment but, on the other hand, a registered trade name is not an entity that can be sued to a judgment.

**{¶ 55}** There was a degree of ambiguity in R.C. 1329.10(C) with respect to the "user of" language, as it could be interpreted to authorize suit to be commenced either against the trade name or fictitious name solely or only against the *user* of the trade name or fictious name. However, this ambiguity was resolved in 2002 by the Ohio Supreme Court in a case in which the court held that a default judgment entered solely against a fictitious name was

- 17 -

not void. *Family Medicine Foundation Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034.[8]

**{¶ 56}** Bright had a medical malpractice claim related to treatment received at the Thomas E. Rardin Family Practice Center ("the Practice Center"). Id. at ¶1. Prior to filing suit, Bright's attorneys were apparently unable to determine the legal entity that operated the Practice Center. Id. at ¶ 13. Bright then filed suit against the Practice Center, served a receptionist at the Practice Center with a copy of the suit, and later moved for default judgment when the complaint went unanswered. *Id.* at ¶ 1, 14. Following a damages hearing, the trial court entered judgment against the Practice Center in the amount of $978,840.31. Id. at ¶ 1.

**{¶ 57}** Bright later learned that the Practice Center was a fictitious name used by "Family Medicine Foundation, Inc." ("FMF"). *Id.* at ¶ 2. Bright then moved for a judgment debtor examination of FMF. Id. at ¶ 3. In opposing Bright's efforts, FMF argued that the judgment against the Practice Center was void for being rendered against a nonentity fictitious name. The trial court rejected this argument and found FMF could be held liable. *Id.* The appeals court reversed that decision. *Id.* at ¶ 4.

**{¶ 58}** The Ohio Supreme Court accepted a certified conflict review. *Id.* The certified conflict question presented was "does R.C. 1329.10(C) permit a plaintiff to commence or maintain an action solely against a fictitious name, or must the action be commenced and/or maintained against the user of the fictitious name?" *Id.* at ¶ 5. After analyzing the legislative intent, the court held that R.C. 1329.10(C) permits a plaintiff to bring a lawsuit against a party named only by its fictitious name. *Id.* at ¶ 15. Separately, the court rejected FMF's

---

8. *Family Medicine* involved a fictitious name, rather than the registered trade name at issue here. Nonetheless, R.C. 1329.10(C) makes no apparent distinction between trade names and fictitious names insofar as bringing and maintaining suit.

argument that the judgment against its fictious name was void, noting that FMF had knowledge of the lawsuit filed against its fictitious name and took no action to defend the suit. *Id.* at ¶ 13-14.

**{¶ 59}** Similarly, Stonecreek Dental clearly had knowledge that the suit was filed against the trade name yet took no formal action to bring this issue to the court until after the judgment had been rendered against it following the second jury trial. While Stonecreek Dental did not ignore the complaint and defended the suit, its implied acquiescence to have the case tried against its trade name also supports the conclusion that the judgment against "Stonecreek Dental Care" is not void. Stonecreek Dental initially noted what is alleged to be its "correct" legal name but then it and Dr. Ginn proceeded to litigate the case as if it were against the trade name rather than forcing the issue by asking the trial court to modify the pleadings or for a ruling to identify the correct legal entity. If Stonecreek Dental had been inclined to ask the trial court to modify the pleadings prior to the trial to identify the correct legal party, it may well have been an abuse of discretion not to allow such an amendment. But when the matter proceeded to trial and the parties all tried the case as if it were against the trade name, and the jury returned a verdict against the trade name, the argument for amending the pleadings after the fact is less compelling.

**{¶ 60}** With regard to service of process, this court is aware that the Civil Rules are plainly inconsistent with this interpretation of R.C. 1329.10(C) because the Rules do not provide for a method of service on a trade name. *See* Civ.R. 4.2. However, Stonecreek Dental never raised insufficiency of service as an affirmative defense in its answer and has fully participated in this case and has therefore waived any argument with regard to sufficiency of service. Civ.R. 12(H)(1). Additionally, service was obtained consistent with the Civil Rules in terms of service on a limited liability company i.e., at a usual place of business.

Civ.R. 4.2(G).

{¶ 61} Upon consideration of the language of R.C. 1329.10(C) and *Family Medicine*, this court holds that Dr. Ginn's judgment against "Stonecreek Dental Care" is not void. Pursuant to R.C. 1329.10(C), Dr. Ginn could commence and maintain his action against the trade name "Stonecreek Dental Care." R.C. 1329.10(C) does not indicate that a plaintiff must take any further action, such as substituting the legal entity behind the trade name, in order to "maintain" the action against the trade name.

{¶ 62} Stonecreek Dental cites the earlier Ohio Supreme Court case of *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573 (1992), for the argument that the judgment rendered against it is void. In that case, which also involved a fictitious name rather than a registered trade name, the Ohio Supreme Court held that a judgment against a fictitious name is void where the plaintiff was aware of the individual sole proprietor behind the fictitious name. However, while not explicitly overruling *Patterson*, the Ohio Supreme Court in *Family Medicine* noted that *Patterson* did not address R.C. 1329.10(C). *Id.* at ¶ 13. The court then stated that it would not apply the holding of *Patterson* because it was not based on R.C. 1329.10(C). *Id.* Accordingly, because this court's decision is premised on R.C. 1329.10(C), we do not apply *Patterson.*

{¶ 63} That the Revised Code permits a lawsuit to be maintained solely against a registered trade name is unexpected and is likely the result of the unique situation presented in this case where a plaintiff has intentionally sued a registered trade name that is being used by multiple distinct legal entities (the various Stonecreek Dental practices), that is registered to a single legal entity (J. Clarke Sanders DDS Inc.), all of which is commonly owned by two individuals dentists who are not parties to this appeal. Significantly, neither R.C. 1329.10(C) nor *Family Medicine* provide specific guidance as to the result in maintaining a lawsuit solely

against a fictitious name or registered trade name. Dr. Ginn has concluded that such a judgment will allow him to institute collection proceedings against all "owners and users" of the trade name. That issue is not before the court in this appeal.

**{¶ 64}** Accordingly, this court concludes that the trial court did not err in denying Stonecreek Dental's motion to void the judgment entry.

<u>Civ.R. 15(B)</u>

**{¶ 65}** Stonecreek Dental argues that the trial court abused its discretion in not amending the complaint pursuant to Civ.R. 15(B) to reflect the name of the Chillicothe limited liability company. Civ.R. 15(B) provides:

> Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

**{¶ 66}** "[Civ.R.] 15(B) allows for the amendment of pleadings to conform to evidence presented at trial, and thus, 'treats issues that were not raised in the pleadings as if they were so raised, as long as they were tried with the express or implied consent of the parties and substantial prejudice will not arise from the result.'" *Richards v. Newberry*, 12th Dist. Clermont No. CA2014-08-061, 2015-Ohio-1932, ¶22, quoting *Aztec Internatl. Foods, Inc. v.*

*Duenas*, 12th Dist. Clermont No. CA2012-01-002, 2013-Ohio-450, ¶ 25. This court reviews a trial court's decision on a Civ.R. 15(B) motion for an abuse of discretion. *Textiles, Inc. v. Design Wise, Inc.*, 12th Dist. Madison Nos. CA2009-08-015 and CA2009-08-018, 2010-Ohio-1524, ¶ 17.

{¶ 67} Stonecreek Dental argues that the trial court should have ordered the pleadings amended because "[t]his case has always been expressly about Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC." In this regard, Stonecreek Dental cites evidence admitted at trial indicating that the legal entity that entered into the employment contract with Dr. Martin was Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC.

{¶ 68} Civ.R. 15(B) allows for amendment of the pleadings with respect to *issues* not raised in the pleadings. Issues ordinarily include unpled claims and affirmative defenses. *Richards* at ¶ 21; *Stafford v. Aces & Eights Harley-Davidson, LLC*, 12th Dist. Warren No. CA2005-06-070, 2006-Ohio-1780, ¶ 21. However, a party to an action is not an issue like a claim or defense that a party failed to include in the pleadings but was tried by the implicit consent of both parties. Accordingly, the trial court did not abuse its discretion in denying Stonecreek Dental's motion to amend the pleadings based on Civ.R. 15(B).[9]

## Civ.R. 60(A)

{¶ 69} Next, Stonecreek Dental argues that the trial court abused its discretion in not issuing a corrected judgment entry pursuant to Civ.R. 60(A), which provides:

> **Clerical mistakes.** Clerical mistakes in judgments, orders or

---

9. Civ.R. 15(A) permits amendments adding new parties. However, Civ.R. 15(C), which governs the relation back of amendments to the pleadings, requires any amendments adding new parties to be brought within the statute of limitations period, amongst other requirements. It appears likely that the four-year statute of limitations on tort claims had passed when Dr. Ginn first requested, in 2018, to amend the pleadings to add new parties.

- 22 -

other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

{¶ 70} This court reviews a trial court's decision on a Civ.R. 60(A) motion for an abuse of discretion. *In re D.H.*, 4th Dist. Gallia No. 09CA11, 2009-Ohio-6009, ¶ 46; *see Observatory Group v. Chovan*, 12th Dist. Warren No. CA96-05-041, 1996 Ohio App. LEXIS 5211, *2 (Nov. 25, 1996).

{¶ 71} "Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments." *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100 (1996), citing *Londrico v. Delores C. Knowlton, Inc.*, 88 Ohio App.3d 282, 285 (9th Dist.1993). "The term 'clerical mistake' refers to a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment." *Id.*, citing *Londrico* at 285; *Dentsply Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116, 118 (8th Dist.1985).

{¶ 72} The distinction between clerical mistakes, which are subject to correction under Civ.R. 60(A), and substantive mistakes, which are not, is that the former consist of "blunders in execution" and the latter consist of "instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." *Londrico* at 285, citing *Kuehn v. Kuehn*, 55 Ohio App.3d 245, 247 (12th Dist.1988).

{¶ 73} In *Scaglione v. Saridakis*, 8th Dist. Cuyahoga No. 91490, 2009-Ohio-4702, the court of appeals affirmed the denial of a Civ.R. 60(A) motion to correct a judgment entry by

substituting an individual/sole proprietor in place of a fictitious business name. The plaintiff was injured after being struck by a vehicle while at "The Car Corner," an auto repair shop. *Id.* at ¶ 2. He sued an insurance company and "The Car Corner," which was the fictitious business name of a sole proprietorship owned by Thomas McCutcheon. *Id.* at ¶ 4-6. McCutcheon was not named in the complaint but was served with a copy of the complaint. *Id.* at ¶ 4. McCutcheon appeared at a court conference but was told he could not represent The Car Corner. *Id.* at ¶ 5. Afterwards, neither he nor The Car Corner defended the case. *Id.*

{¶ 74} Eventually, the trial court entered a default judgment against The Car Corner. The matter later proceeded to a jury trial and the plaintiff was awarded $333,000 in damages against the insurance company and The Car Corner. *Id.*

{¶ 75} Following the judgment, the plaintiff subpoenaed McCutcheon and discovered that he was the sole proprietor behind The Car Corner. *Id.* at ¶ 6. The plaintiff claimed that he did not know the legal status of The Car Corner until after the trial because The Car Corner business name was not registered. *Id.* The plaintiff asked the trial court to correct the judgment entry nunc pro tunc by substituting McCutcheon for The Car Corner. *Id.* at ¶ 2.

{¶ 76} Following a hearing, the trial court denied the Civ.R. 60(A) motion. *Id.* at ¶ 6. The appeals court affirmed, noting that The Car Corner had been known by no other name throughout the litigation, that the plaintiff never amended the complaint to name McCutcheon, and the plaintiff had never described The Car Corner as a fictitious name. The appeals court determined that the trial court had not omitted McCutcheon's name from the judgment entry as a mere oversight and the judgment entry accurately reflected what the trial court decided. *Id.* at ¶ 10.

{¶ 77} Here, Dr. Ginn filed suit against the trade name Stonecreek Dental Care and

- 24 -

apparently did so intentionally and strategically. "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC" answered the complaint and it noted its "correct" legal name in some of the early filings in the case. However, as years of litigation ensued, Stonecreek Dental made no effort to clarify its identity in the litigation, despite this issue having been discussed with the trial court and in filings on several occasions. Neither party sought to amend or correct the pleadings to reflect that the limited liability company was a party until much later in the case. When confronted with this issue, Dr. Ginn expressly disclaimed suing the Chillicothe limited liability company.

{¶ 78} Given that Dr. Ginn claims to have intentionally sued the trade name and that neither party ever sought, prior to the verdict, to substitute the Chillicothe limited liability company, the trial court's decision to include the trade name in the judgment entry does not appear to be an oversight or a clerical mistake. Instead, it appears that, like *Scaglione*, the judgment entry accurately reflects how the case was tried and what the jury decided. Moreover, substituting a limited liability company for a trade name would be a substantive change to the judgment entry, which would or could have a considerable legal effect on the outcome of the proceedings. This court finds no abuse of discretion in the trial court's decision to deny Stonecreek Dental's motion to correct the judgment entry pursuant to Civ.R. 60(A). This court overrules Stonecreek Dental's first cross-assignment of error.

{¶ 79} Cross-Assignment of Error No 2:

{¶ 80} PLAINTIFF FAILED TO ADDUCE EVIDENCE OF DAMAGES FROM THIS DEFENDANT THAT WERE DISTINCT FROM DAMAGES ALLEGEDLY FLOWING FROM THE CONDUCT OF DR. MARTIN.

{¶ 81} Stonecreek Dental argues that Dr. Ginn failed to present the jury with evidence of damages that proximately resulted from Stonecreek Dental's tortious conduct that were

distinct from the damages resulting from Dr. Martin's breach. Stated otherwise, Stonecreek Dental is arguing that Stonecreek Dental and Dr. Martin acted together in their actionable conduct towards Dr. Ginn and therefore the earlier damage award rendered against Dr. Martin by the jury in the first trial encompassed all the damages suffered by Dr. Ginn. Accordingly, Stonecreek Dental contends that a second award of damages against itself, without distinct evidence of its conduct separate from its involvement with Dr. Martin, has allowed Dr. Ginn to duplicate his damage award.

{¶ 82} Stonecreek Dental cites no authority for its argument and fails to cite the record. Instead, it "incorporates by reference its prior briefing to the Court on this issue," but fails to specify the "prior briefing" to which it refers. In its reply brief, Stonecreek Dental clarifies that by "prior briefing" it was referring to 12 pages of argument contained in an appellate brief filed several years ago on a previous appeal in this case.[10]

{¶ 83} The referenced prior briefing involved Stonecreek Dental's argument opposing one of Dr. Ginn's assignments of error in that case. Stonecreek Dental had claimed that Dr. Ginn was collaterally estopped from relitigating damages against it after having litigated his case against Dr. Martin. This court rejected that argument, finding the collateral source rule applicable. *Ginn*, 2017-Ohio-4370 at ¶ 19. Stonecreek Dental did not appeal that decision to the Ohio Supreme Court.

{¶ 84} Effectively, Stonecreek Dental is re-arguing an issue that was raised but rejected in earlier proceedings. Stonecreek Dental did not appeal to the Ohio Supreme Court and therefore that matter is law of the case. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). However, even if the matter were not law of the case, Stonecreek Dental has failed to

---

10. This court granted Stonecreek Dental's request to file a 30-page brief, of which it took advantage. It did not request leave to incorporate 12 additional pages of argument.

support its argument on appeal with separate argument, authority in support, and citation to the record. This court may therefore disregard the assignment of error pursuant to App.R. 12(A)(2). For these reasons, this court overrules Stonecreek Dental's second assignment of error.

{¶ 85} Cross-Assignment of Error No. 3:

{¶ 86} THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR DIRECTED VERDICT REGARDING PLAINTIFF'S FAILURE TO CORRECTLY CALCULATE ALLEGED LOST PROFITS.

{¶ 87} Stonecreek Dental contends that the trial court should have granted its motion for a directed verdict because Dr. Ginn failed to prove lost profits. Specifically, Stonecreek Dental argues that Dr. Ginn only submitted evidence of lost revenue and did not submit evidence of expenses.

{¶ 88} The standard for granting a directed verdict is set forth in Civ.R. 50(A)(4):

> When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 89} In ruling on a motion for a directed verdict, the trial court need not consider either the weight of the evidence or the credibility of the witnesses. *Collins v. Admr., Bur. of Workers' Comp.*, 12th Dist. Madison No. CA2006-12-054, 2007-Ohio-5634, ¶ 14, citing *Choate v. Tranet, Inc.*, 12th Dist. Warren No. CA2005-09-105, 2006-Ohio-4565, ¶ 49. Further, the trial court must not only construe all evidence in a light most favorable to the nonmoving party, it must also give the nonmoving party the benefit of all "reasonable

inferences" that may be drawn from the evidence. *Id.* citing *Broz v. Winland*, 68 Ohio St.3d 521 (1993). This court reviews a decision on a motion for directed verdict de novo. *Enderle v. Zettler*, 12th Dist. Butler No. CA2005-11-484, 2006-Ohio-4326, ¶ 7.

**{¶ 90}** In the first trial, Dr. Martin moved for a directed verdict and presented the trial court with an identical argument, which it denied. Dr. Martin assigned error to that decision and this court affirmed the trial court, holding that Dr. Ginn's testimony presented a proper basis to calculate damages. *Ginn*, 2015-Ohio-4452 at ¶ 18-20. The Ohio Supreme Court declined Dr. Martin's request for a discretionary review of that opinion. 145 Ohio St.3d 1422, 2016-Ohio-1173.

**{¶ 91}** In the second jury trial, Dr. Ginn testified as to the historical revenues of his practice. Dr. Ginn also testified as to the revenue generated by Dr. Martin for the six months he was with Dr. Ginn's practice and that he doubled that amount to determine how much revenue he would have had if Dr. Martin had stayed with the practice for a year. Stonecreek Dental introduced Dr. Ginn's tax returns and various other exhibits depicting his damages. Finally, Dr. Ginn testified that wages were the most significant portion of his office's expenses on a yearly basis and testified as to the wage expenses between 2010 and 2016.

**{¶ 92}** Dr. Ginn presented substantially the same evidence in the second trial as was presented in the first trial. Construing all the evidence in a light most favorable to Dr. Ginn, this court finds there was sufficient evidence to support a lost profits calculation to a reasonable degree of certainty. Accordingly, this court overrules Stonecreek Dental's third cross-assignment of error.

**{¶ 93}** Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.

- 28 -