[Cite as *Gingrich v. G & G Feed & Supply, L.L.C.*, 2022-Ohio-982.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LORI J. GINGRICH | JUDGES:<br>Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2021 CA 00060 |
| G & G FEED & SUPPLY, LLC, ET AL., | |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Court of Common Pleas, Case No. 2018 CV 00410

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     March 25, 2022

APPEARANCES:

For Plaintiff-Appellant

ANTHONY A. MAHAN
Mahan Law
102 Fairfield Avenue – 2nd Floor
Bellevue, KY 41073

For Defendants-Appellees

THOMAS R. MERRY, ESQ.
Thomas R. Merry Co., LPA
155 Commerce Park Drive, Ste. #3
Westerville, OH 43082

*Hoffman, J.*

{¶1}    Plaintiff-appellant Lori J. Gingrich appeals the July 8, 2021 Order entered by the Licking Court of Common Pleas, which denied her motion to correct the record. Defendant-appellee is IronGate Equestrian Center ("IronGate").

STATEMENT OF THE CASE

{¶2}    On April 11, 2018, Appellant filed a complaint for intentional tort, naming G & G Feed & Supply as defendant. Appellant worked for G & G Feed, which was owned and operated by Tera Gore. The complaint alleged, on April 15, 2016, Gore intentionally struck Appellant with a heavy metal clipboard, causing Appellant to sustain serious injuries. At the time of the incident, Appellant was working at an equestrian event and Gore was her boss.  Appellant filed an amended complaint on April 13, 2018, adding Gore, Global Vision Alliance, Inc., and IronGate as defendants ("Defendants," collectively).

{¶3}    After Defendants failed to answer, Appellant filed a motion for default judgment on June 26, 2018. Via Entry filed July 26, 2018, the trial court granted the motion.   The trial court conducted a hearing on damages on August 27, 2018. Defendants did not appear.  Via Entry filed September 7, 2018, the trial court awarded Appellant damages in the amount of $953,578.75.  On September 27, 2018, Defendants filed a Civ.R. 60(B) motion for relief from judgment.   Appellant filed a response in opposition on December 3, 2018.  Defendants filed a reply in support of their motion for relief from judgment on December 20, 2018.  Via Decision and Entry filed January 15, 2019, the trial court granted the motion and vacated the July 26, 2018 Entry granting default judgment against Defendants and the September 7, 2018 Entry awarding damages to Appellant.

{¶4}    Appellant appealed the decision to this Court, arguing the trial court abused its discretion in granting defendants' Civ. R. 60(B) motion for relief from judgment.  This Court agreed and reversed the trial court's judgment and remanded the matter to the trial court to reinstate the default judgment and the damages award.  *Gingrich v. G & G Feed*, 5th Dist. Licking No. 2019 CA 00008, 2019-Ohio-4779.  Upon remand, Appellant filed a motion for post-judgment interest.  The trial court scheduled an evidentiary hearing on January 30, 2021.  Via Judgment Entry filed January 30, 2021, the trial court reinstated the default judgment and damages award, and granted post-judgment interest.

{¶5}    At some point in her collection efforts, Appellant learned IronGate was the registered tradename for Otter Fork Equestrian Complex, LLC. ("Otter Fork").  Appellant filed a Praecipe for a Certificate of Judgment in the name of "Otter Fork Equestrian Complex, LLC T/A IronGate Equestrian Center" with the Licking County Clerk of Courts on March 27, 2020.  The Clerk issued the Certificate of Judgment listing Otter Fork as a judgment debtor.  Thereafter, the attorney for Otter Fork contacted the Licking County Clerk's Office and instructed the Clerk to amend the Certificate of Judgment to remove Otter Fork as a judgment debtor.

{¶6}    On February 22, 2021, Appellant filed a Motion to Correct the Record, requesting the trial court amend and correct the record, including the judgment entry, docket, and certificate of judgment, to reflect the legal name of IronGate, to wit: Otter Fork.  IronGate filed a memorandum contra, arguing Appellant should not be permitted to amend the complaint and judgment to add a new defendant.  Appellant filed a reply in support of her motion.  Via Order filed July 8, 2021, the trial court denied Appellant's motion.  The trial court found:

The motion has not identified any errors in the record that need to be corrected.  In fact, the Court has given [Appellant] precisely what she asked for – a judgment against IronGate.

* * *

While it is true that a Plaintiff can commence and maintain an action against a trade name, the Court is unaware of any case law that suggests or holds that a judgment against a trade name is automatically a judgment against a legal entity that registered the trade name.

[Appellant] commenced and maintained her lawsuit against IronGate and a judgment has been rendered against IronGate.

July 8, 2021 Order Denying Plaintiff's Motion to Correct the Record at 2-3, unpaginated.

{¶7} It is from this order Appellant appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN HOLDING A JUDGMENT AGAINST A PARTY NAMED BY ITS TRADE NAME IS NOT ENFORCEABLE AGAINST THE LEGAL ENTITY THAT REGISTERS THE NAME PURSUANT TO R.C. 1329, THEREBY DENYING EXECUTION THEREON AND EFFECTIVELY VACATING PLAINTIFF'S JUDGMENT.

II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION TO CORRECT THE RECORD TO AMEND THE JUDGMENT AND CERTIFICATE OF JUDGMENT TO INCLUDE THE LEGAL NAME OF THE JUDGMENT DEBTOR, THEREBY DENYING EXECUTION THEREON AND EFFECTIVELY VACATING PLAINTIFF'S JUDGMENT.

I

{¶8}    In her first assignment of error, Appellant asserts the trial court erred in finding a judgment against a trade name is not enforceable against the entity behind the trade name.

{¶9}    In support of her position, Appellant relies upon *Family Medicine Found., Inc. v. Bright,* 96 Ohio St.3d 183, 2002–Ohio–4034, in which the Ohio Supreme Court held "R.C. 1329.10(C) permits a plaintiff to bring suit against a party named only by its fictitious name." *Id.* at ¶15; See, also R.C. 1329.10(C) ("An action may be commenced or maintained against the user of a trade name or fictitious name whether or not the name had been registered or reported in compliance with section 1329.01 of the Revised Code."). Appellant submits the *Bright* Court implicitly held "a judgment against a fictious name is automatically enforceable against the legal entity using the name." Brief of Appellant at 9.

{¶10} In *Bright*, Bright filed a medical malpractice action against the Thomas E. Rardin Family Practice Center ("the Practice Center"). *Id.* at ¶1. Prior to filing the action, Bright's attorneys made repeated, yet unsuccessful, attempts to identify the legal entity behind the Practice Center. *Id.* at 13. The trial court granted Bright's motion for default

judgment against the Practice Center, which neither filed an answer nor appeared. *Id.* at ¶1. The trial court conducted a damages hearing and entered judgment against the Practice Center in the amount of $978,840.41. *Id.*

**{¶11}** Bright subsequently learned the Practice Center was the fictitious name of Family Medicine Foundation, Inc. ("FMF"). *Id.* at ¶2. Bright filed a motion for judgment debtor examination to determine FMF's ability to satisfy the default judgment against the Practice Center. *Id.* at ¶3. In response, FMF filed a motion to intervene and a motion to vacate the judgment, arguing the default judgment was void as such was rendered against a nonentity. *Id.* The trial court denied both motions. *Id.*

**{¶12}** Thereafter, FMF filed an action against Bright and her attorneys, seeking an injunction to prohibit Bright from executing upon FMF's assets to satisfy the default judgment against the Practice Center. *Id.* at ¶4. The trial court denied the requested relief, finding the judgment was enforceable against FMF. *Id.* The court of appeals reversed, holding, under R.C. 1329.10(C), a suit could not be commenced or maintained against a party named only by its fictitious name. *Id.* The Ohio Supreme Court reversed the judgment of the court of appeals, holding "R.C. 1329.10(C) permits a plaintiff to bring suit against a party named only by its fictitious name." *Id.* at ¶15. The *Bright* Court concluded "FMF's request for injunctive relief was properly denied by the trial court." *Id.*

**{¶13}** IronGate argues *Bright* is factually distinguishable from the instant action, explaining, unlike the plaintiff in *Bright*, Appellant herein "failed to do even the most basic due diligence with the Ohio Secretary of State, as the identification of the registrant of the trade name is literally four clicks away from the home page for the Ohio Secretary of State." Brief of Appellee at 16. We shall discuss this argument in detail, infra. IronGate

submits the instant action is more analogous to *Bailey v. E. Liverpool City Hosp.*, No. 4:14–cv–2809, 2015 WL 5102768 (N.D. Ohio Aug. 31, 2015).

**{¶14}** In *Bailey*, Plaintiff brought a lawsuit against East Liverpool City Hospital and East Liverpool City Hospital, Growing for Tomorrow and Today ("Trade Name Defendants") as well as the user of the trade name, The City Hospital Association, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). *Id.* at *1. The Trade Name Defendants filed a Rule 12(b)(6) motion to dismiss, arguing they are trade names registered with the State of Ohio and do not employ any employees; therefore, could not be held liable under the ADEA. *Id.* at *4. Plaintiff, relying on *Bright*, maintained the Trade Name Defendants were proper parties to her lawsuit. *Id.*

**{¶15}** The *Bailey* Court distinguished *Bright*, stating:

Appellants in *Bright* only named the Practice Center in the complaint because they were unable to determine the legal entity behind the fictitious name. *Bright,* 772 N.E.2d at 11. In this case, the two Trade Name Defendants are registered with the State of Ohio, and their holder, The City Hospital Association, is readily ascertainable and part of the lawsuit. Bailey could have reasonably determined The City Hospital Association is the legal entity behind the trade names. Bailey's failure to utilize public records does not permit her to maintain an action against the Trade Name Defendants. (Citation omitted). *Id.*

{¶16} We note "the decisions of federal courts constitute persuasive authority only and are not binding on this court." *State v. Prom*, 12th Dist. Butler No. CA2004-07-174, 2005-Ohio-2272, ¶ 22. Nevertheless, we find IronGate's reliance on *Bailey* misplaced.

{¶17} The procedural posture of the case before us is significantly different from the procedural posture of *Bailey*. *Bailey* is the ruling by a federal district court on a Rule 12(b)(6) motion to dismiss. The *Bailey* Plaintiff named the Trade Name Defendants and the user of the trade name as defendants in her original complaint. The Trade Name Defendants appeared and filed a motion to dismiss. Here, IronGate neither answered the complaint nor appeared. IronGate did not take any steps to disclose itself as a trade name or identify Otter Fork as the holder of the trade name prior to filing its Civ. R. 60(B) motion for relief from judgment. Due to these differences, we find *Bailey* not only inapplicable, but also unpersuasive so as to alter the applicability of *Bright* in this case.

{¶18} The *Bailey* Court also found it lacked "jurisdiction to entertain a suit against trade names." *Bailey*, supra at *4, citing *Rachells v. Cingular Wireless*, 483 F.Supp.2d 583, 587 (N.D. Ohio 2007). In the instant action, the trial court had jurisdiction to entertain Appellant's suit against IronGate because, pursuant to R.C. 1329.10(C), a plaintiff may commence or maintain an action against a party named only by its fictitious name.

{¶19} In *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette Nos. CA2018-09-018, CA2018-09-019, and CA2018-11-022, 2019-Ohio-3229, the Twelfth District Court of Appeals addressed the question of "whether 'maintained' could be interpreted to empower a plaintiff to sue a trade name only and ultimately receive a judgment against the trade name." *Id.* at ¶53. Because the statute does not define "maintained," the *Ginn* Court looked to the plain and ordinary meaning of the word:

Webster's Dictionary provides the following definitions for "maintain":

**1** : to keep in a state of repair, efficiency, or validity : preserve from failure or decline * * * **2 a** : to sustain against opposition or danger : back up : DEFEND, UPHOLD * * * **b** : to uphold in argument : contend for * * * **3** : to persevere in : carry on : keep up : CONTINUE * * * **4** : to provide for : bear the expense of : SUPPORT * * * **5** : to affirm in or as if in argument: ASSERT, DECLARE * * * **6** : to assist (a party to legal action) so as to commit maintenance.

*Webster's Third New International Dictionary* 1362 (1993). *Id*. at ¶54.

**{¶20}** The *Ginn* Court concluded:

In general, most of these definitions fall within the concept of "ensuring the survival of." Thus, an ordinary and plain interpretation of "maintained" as used in R.C. 1329.10(C) would support the conclusion that the Revised Code permits suit to be filed solely against a trade name and for such suit to be "maintained" through the entire course of an action and that a judgment ultimately rendered in such a suit is not void. Additionally, this court's interpretation is buttressed by R.C. 1329.10(B), which expressly permits suit to be brought and maintained by a registered trade name, but not a fictitious name. It would be inconsistent to conclude that, on one hand, the Revised Code recognizes a registered trade name as an entity that can

bring an action and be awarded a judgment but, on the other hand, a registered trade name is not an entity that can be sued to a judgment. *Id.*

**{¶21}** In *Ginn*, following a jury trial and after the trial court entered final judgment on the verdict, Stonecreek Dental Care ("Stonecreek Dental") moved the trial court to correct the judgment entry to reflect "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC" as the defendant's legal name. *Id.* at ¶9. "Stonecreek Dental Care Chillicothe – J. Clarke Sanders, D.D.S., LLC" was the limited liability company which operated the Stonecreek Dental's office in Chillicothe. *Id.* Stonecreek Dental argued "Stonecreek Dental Care" was merely a trade name and any judgment against the trade name was void. *Id.* The trial court denied Stonecreek Dental's motion to correct the judgment entry. *Id.* Stonecreek Dental appealed. *Id.* at ¶10.

**{¶22}** On appeal, Stonecreek Dental argued the judgment against the trade name "Stonecreek Dental Care" was void as being rendered against a nonentity. *Id.* at ¶50. Although Stonecreek Dental acknowledged the Revised Code permits an action to be brought against a fictitious business name, it argued Plaintiff Ginn, after bringing the action, had a duty to substitute the legal entity behind the trade name, and failed to do so. *Id.*

**{¶23}** After analyzing *Bright*, the *Ginn* Court noted Stonecreek Dental clearly had knowledge the suit had been filed against the trade name, yet took no formal action to bring this issue to the court until after the judgment had been rendered against it following the jury trial. *Id.* at ¶59. The Court continued, "While Stonecreek Dental did not ignore the complaint and defended the suit, its implied acquiescence to have the case tried

against its trade name also supports the conclusion that the judgment against "Stonecreek Dental Care" is not void." *Id.* The Twelfth District concluded "R.C. 1329.10(C) does not indicate that a plaintiff must take any further action, such as substituting the legal entity behind the trade name, in order to 'maintain' the action against the trade name." *Id.* at ¶61. The *Ginn* Court did not address whether the judgment would allow Plaintiff Ginn to institute collection proceedings against all "owners and users" of the trade name, finding "[t]hat issue is not before the court in this appeal." *Id.* at ¶63.

**{¶24}** In accordance with *Ginn*, we find Appellant was not required to take any further action in order to maintain the action against IronGate. Otter Fork allowed the action to proceed with IronGate as a named defendant. After revealing Otter Fork as the legal entity behind the trade name in Defendants' Civ R. 60(B) motion, the matter was defended using only the trade name "IronGate." Otter Fork persisted in using the trade name to protect the sui juris entity. In light of the fact Otter Fork knew its rights could be affected by the action, "we find it difficult to understand how it can now cry foul and allege…" Appellant should not be able to collect on her judgment. See, *Bright* at ¶14. Under these circumstances, we find "an entity should not be permitted to dodge liability." *Id.*

**{¶25}** We disagree with IronGate's assertion Appellant's failure "to do even the most basic due diligence with the Ohio Secretary of State" is somehow fatal to her claim. Brief of Appellee at 16. If the legislature had intended for a plaintiff to determine the legal entity behind the trade name before commencing or maintaining "an action against a party named only by its fictitious name" pursuant to R.C. 1329.10(C), the legislature would have included such language in the statute. The legislature did not include such language;

therefore, we find no such burden exists.  A legal entity's decision to register a trade name does not create a separate duty on a private party seeking to bring suit against that entity, although such practice should be encouraged to avoid the issue raised in the case sub judice.

{¶26}  In *Bright*, while the Supreme Court noted Bright and her attorneys made attempts to identify the legal entity behind the Practice Center, the High Court focused on the fact FMF, despite having knowledge of the lawsuit filed against its fictitious name, did not take any action to defend the suit or "take adequate steps to apprise appellants of FMF's connection to the Practice Center." *Id*. at ¶13-14.  In the instant action, Appellant's Amended Complaint was sent via certified mail to IronGate at 12298 Croton Road, Croton, OH 43013, its primary location.  Deposition of Tera Gore at 17.  The return receipt for the certified mail was signed by Tera Gore on April 17, 2018.  Trial Docket #4.  After Defendants failed to answer or appear, Appellant filed a motion for default judgment, which the trial court granted.  The trial court subsequently awarded damages to Appellant.

{¶27}  On September 27, 2018, Attorney Angela Paul Whitfield as "Counsel for Defendants G & G Feed & Supply LLC, Tera Gore, Global Vision Alliance, Inc., and IronGate Equestrian Center" filed a Civ. R. 60(B) Motion for Relief from Judgment. Therein, Defendants asserted excusable neglect as grounds for relief under Civ. R. 60(B)(1).  Defendants also argued they had "several meritorious defenses to Plaintiff's complaint," including, inter alia, "IronGate Equestrian Center is not a legal entity, but rather a trade name, and was not the employer of [Appellant] and not related to the incident."  Defendants' Motion for Relief from Judgment at 11, 13.  Attached to Defendants' Civ. R. 60(B) motion is the Affidavit of Tera Gore, in which Gore averred,

"IronGate Equestrian Center is a trade name and was not an employer, nor was it owned by any of the Defendants on April 15, 2016. A true and correct copy of the State of Ohio certificate for the original filing of the trade name is attached hereto as Exhibit 1." Defendants' Motion for Relief from Judgment, Exhibit B, Affidavit of Tera Gore at ¶4. Exhibit 1 of Gore's Affidavit is a copy of the Certificate from the Ohio Secretary of State registering the tradename "IronGate Equestrian Center" to Otter Fork.

**{¶28}** As stated, supra, Otter Fork allowed the action to proceed with IronGate as the named defendant. The matter was defended using only the trade name "IronGate." Although Otter Fork's identity was disclosed in Defendants' motion for relief from judgment, Otter Fork has persisted in using the trade name throughout all subsequent filings, including this Appeal. Similar to the Ohio Supreme Court's finding in *Bright*, we find Otter Fork cannot hide behind its trade name to avoid liability.

**{¶29}** In *Bright*, the Ohio Supreme Court declined to apply *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 589 N.E.2d 1306 (1992), finding the *Patterson* decision did not mention R.C. 1329.10(C), which was the basis of its holding in the matter before it. *Bright*, supra at ¶13. The High Court explained *Patterson* "held that a plaintiff may not maintain an action against a defendant solely under a fictitious name where the plaintiff knows that the defendant does business as a sole proprietor." *Id*. at ¶12. In *Patterson,* the plaintiff named a sole proprietorship as the defendant. *Patterson*, supra at 574. The owner of the sole proprietorship notified the plaintiff on three occasions the plaintiff had sued an entity without the capacity to be sued. *Id*. at 575. However, the plaintiff did not amend his complaint, and over the defendant's objections, the case proceeded to trial, resulting in judgment in favor of the plaintiff. *Id*. at 575–576. We find *Bright* limited the

holding of *Patterson* to matters involving sole proprietorships.  Because the case sub judice does not involve a sole proprietorship, we find *Patterson* inapplicable.

**{¶30}** *Bright* was before the Ohio Supreme Court on review of the Tenth District Court of Appeals' reversal of the trial court's denial of FMF's request for injunctive relief and the trial court's determination the judgment against the Practice Center was enforceable against FMF.  The *Bright* Court, concluding "FMF's request for injunctive relief was properly denied by the trial court," reversed the judgment of the court of appeals.  In doing so, the Ohio Supreme Court implicitly reinstated the trial court's judgment entry denying injunctive relief and allowing Bright to enforce her judgment against FMF.

**{¶31}** Based upon the foregoing and in accordance with *Bright*, we find the judgment against IronGate is enforceable against Otter Fork.

**{¶32}** Appellant's first assignment of error is sustained.

II

**{¶33}** In her second assignment of error, Appellant contends the trial court erred in denying her motion to correct the record to amend the judgment and certificate of judgment.  We agree.

**{¶34}** Civ. R. 15(A) provides, in part:

> **(A) Amendments.** A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a

motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

{¶35} "Amendments to name the real party being sued under a trade name, whether individual or corporation, should be allowed upon the theory that a trade name is really the name of the person using it." *Zak v. J.R. Chapman Trucking*, 6th Dist. Huron App. No. H-78-9, 1978 WL 214971 (Citations omitted). "The liberal provisions of Civ. R. 15(A) . . . created a comprehensive grant of power to the courts to permit amendments so that a court could, *either before or after judgment*, in furtherance of justice and on such terms as it deems proper, amend any pleading or process by correcting a mistake in the name of a party or a mistake in any other respect." *Id.* (Citations and footnotes omitted). (Emphasis added). Because the language of Civ.R. 15(A) favors a liberal amendment policy, "a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party." *Gasper v. Bank of Am., N.A.*, 9th Dist. Medina No. 17CA0091-M, 2019-Ohio-1150, ¶16, quoting *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6, 465 N.E.2d 377 (1984).

{¶36} Upon review of the record in this matter, we find nothing therein to establish Appellant acted in bad faith. Nor do we find anything which shows a correction of the record would cause undue delay or undue prejudice to Otter Fork. Accordingly, we find the trial court erred in failing to grant Appellant's motion to correct the record under Civ. R. 15(A).

{¶37} We also find a correction of the record would have been appropriate under Civ. R. 15(C).

{¶38} Civ. R. 15(C) provides:

> **(C) Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

{¶39} Thus, a party must meet three requirements before an amendment "changing the party" can relate back to the original pleading pursuant to Civ. R. 15(C). *Caterpillar Financial Services Corp. v. Tatman*, 4th Dist. Ross, 2019-Ohio-2110, 137 N.E.3d 512, ¶ 49. "First, the claim in the amended complaint must arise 'out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.' Second, the party sought to be substituted by the amendment must have received notice of the action 'within the period provided by law for commencing the action,'

so that the party is not prejudiced in maintaining a defense. Third, the new party, 'within the period provided by law for commencing the action,' knew or should have known that, but for a mistake concerning the proper party's identity, the action would have been brought against the new party." *Id.* "The primary purpose of Civ.R. 15(C) is to preserve actions that, through mistaken identity or misnomer, have been filed against the wrong person." *Id.* at ¶ 50 quoting *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 101, 529 N.E.2d 449 (1988).

**{¶40}** We find the three requirements have been met here. The claims against Otter Fork would be identical to the claims originally asserted against IronGate. Otter Fork had notice of the action against its trade name.[1] Finally, Otter Fork knew or should have known Appellant's designation of IronGate, its registered trade name, as a named defendant exposed it to liability.

**{¶41}** Appellant's second assignment of error is sustained.

---

[1] We are aware Otter Fork has filed another Civ. R. 60(B) motion, which is presently pending in the trial court. Therein, Otter Fork asserts improper service on IronGate. Because the motion for relief from judgment was not before the trial court at the time of the judgment entry under review in this Appeal, we have not considered it in reaching our decision.

{¶42} The judgment of the Licking County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with this Opinion and the law.


By: Hoffman, J.

Wise, Earle, P.J.  and

Delaney, J. concur